No. 24-60240

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Sirius Solutions, L.L.L.P.; Sirius Solutions GP, L.L.C.;
Tax Matters Partner,

*Petitioners – Appellants*

v.

Commissioner of Internal Revenue,

*Respondent – Appellee*

Appeal from the United States Tax Court
Case Nos. 11587-20; 30118-21

# BRIEF OF APPELLANTS

Mary A. McNulty
Lee S. Meyercord
Meghan McCaig
Richard B. Phillips, Jr.
Holland & Knight, L.L.P.
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 964-9500

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Petitioners-Appellants**

Sirius Solutions GP, L.L.C.
Sirius Solutions, L.L.L.P.

**Counsel for Appellants Sirius Solutions GP, L.L.C. and Sirius Solutions, L.L.L.P.**

Mary A. McNulty
Lee S. Meyercord
Meghan McCaig
Richard B. Phillips, Jr.
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

**Limited Partners of Appellant Sirius Solutions, L.L.L.P.**

Kenton Roess Chickering
The Cameron Rockwell Chickering Trust
The Hamilton Nash Chickering Trust
Thomas Bauer
Mark Hendrix
Evelyn Aucoin
William Mansfield
Colleen Estes
James Jackson

**Appellee Commissioner of Internal Revenue**

Danny Werfel

**Counsel for Appellee Commissioner of Internal Revenue**

William Paul
Internal Revenue Service, Washington DC

David Hubbert
Francesca Ugolini
Paul Allulis
U.S. Department of Justice
Washington, DC

*/s/ Meghan McCaig*

Meghan McCaig
Attorney for Appellant

# STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument would be useful to the disposition of this appeal because the appeal presents a novel and important issue of first impression regarding the interpretation and application of the Internal Revenue Code.

# TABLE OF CONTENTS

**Page**

Certificate Of Interested Persons ..................................................... i

Statement Regarding Oral Argument ............................................. iii

Table of Authorities ...................................................................... vi

Jurisdictional Statement ...................................................................1

Statement Of The Issue .....................................................................1

Statement Of The Case .....................................................................2

    A.  Legal Background.............................................................2

    B.  Sirius Solutions and its Limited Partners .........................3

    C.  Sirius Solutions' Federal Income Tax Reporting for 2014–2016 .....4

Summary Of The Argument .............................................................6

Argument ....................................................................................... 10

  I.    The ordinary meaning of "limited partner" in section 1402(a)(13) means a state-law limited partner. ................................................ 10

    A.  Dictionaries at the time of enactment defined "limited partner" as a partner in a state-law limited partnership with limited liability.. 11

    B.  The IRS issued contemporaneous guidance defining "limited partner" as a state-law limited partner......................................... 12

    C.  The Social Security Administration issued contemporaneous guidance defining "limited partner" as a state-law limited partner. ................................................ 18

    D.  Congress rejected the Treasury Department's later attempt to define "limited partner" as something other than a state-law limited partner and declined to amend the statute. ................................... 20

  II.   The Tax Court erred by interpreting "limited partner" to mean a partner functioning as a passive investor........................................ 21

    A.  The Tax Court misinterprets the phrase "as such."........................ 21

    B.  The Tax Court's interpretation violates a canon of statutory interpretation by rendering the carve-out for "guaranteed payments" meaningless. .............................................................. 23

C.    The Tax Court erroneously resorted to the legislative history when the statute is unambiguous ........................................................... 27

D.    The Tax Court applied irrelevant and non-binding case law involving non-state law limited partners. .................................... 29

Conclusion ................................................................................................. 31

Certificate Of Service .............................................................................. 33

Certificate Of Compliance ....................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*Bittner v. United States,*
598 U.S. 85 (2023) ................................................................. 17

*Boechler, P.C. v. Comm'r,*
596 U.S. 199 (2022) ............................................................... 22

*Bostock v. Clayton Cnty., Ga.,*
590 U.S. 644 (2020) ............................................................... 10

*Castigliola v. Comm'r,*
T.C. Memo. 2017-62 .............................................................. 29

*D.G. ex rel. LaNisha T. v. New Caney Indep. Sch. Dist.,*
806 F.3d 310 (5th Cir. 2015) ................................................... 22

*Dresser Indus., Inc. v. Comm'r,*
911 F.2d 1128 (5th Cir. 1990) ................................................... 6

*Erlenbaugh v. United States,*
409 U.S. 239 (1972) ............................................................... 19

*Gen. Motors Acceptance Corp. v. Whisnant,*
387 F.2d 774 (5th Cir. 1968) ................................................... 18

*Hamdan v. Rumsfeld,*
548 U.S. 557 (2006) ............................................................... 26

*Hardy v. Comm'r,*
T.C. Memo. 2017-16 .............................................................. 30

*Helvering v. William Flaccus Oak Leather Co.,*
313 U.S. 247 (1941) ............................................................... 10

*Hibbs v. Winn,*
542 U.S. 88 (2004) ................................................................. 23

*Hough v. Comm'r,*
82 A.F.T.R.2d 98-5263 (3d Cir.), aff'g 1997 T.C. 361 ............. 30

*Howard Hughes Co., L.L.C. v. Comm'r*,
  805 F.3d 175 (5th Cir. 2015) ..................................................... 23

*Kornman & Assocs., Inc. v. United States*,
  527 F.3d 443 (5th Cir. 2008) ..................................................... 27

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024) ................................................. 7, 13, 21

*Rawat v. Comm'r*,
  No. 23-1142, 2024 WL 3504510 (D.C. Cir. July 23, 2024) ..................... 17

*Renkemeyer v. Comm'r*,
  136 T.C. 137 (2011) ............................................................ 29, 30

*Schaeffler v. United States*,
  889 F.3d 238 (5th Cir. 2018) .................................................. 11, 27

*Soroban Capital Partners LP v. Comm'r*,
  Nos. 16217-22, 16218-22,
  2023 WL 8235164 (T.C. Nov. 28, 2023) .................................... *passim*

*Stanford v. Comm'r*,
  152 F.3d 450 (5th Cir. 1998) ..................................................... 27

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) .............................................................. 21

*Thomas v. Reeves*,
  961 F.3d 800 (5th Cir. 2020) ..................................................... 27

*Vitol, Inc. v. United States*,
  30 F.4th 248 (5th Cir. 2022) ..................................................... 11

## Statutes

26 U.S.C. § 707(c) ............................................ 18, 24, 25, 26

26 U.S.C. § 1372(e)(5) .......................................... 28, 29

26 U.S.C. § 1402(a) ................................................... 2

26 U.S.C. § 1402(a)(10) ........................................ 26, 29

26 U.S.C. § 1402(a)(12) ................................................................ 2

26 U.S.C. § 1402(a)(13) ........................................................ *passim*

26 U.S.C. § 1402(b) ...................................................................... 2

26 U.S.C. § 4943(d)(4) ................................................................ 29

26 U.S.C. § 6226(a) ...................................................................... 6

26 U.S.C. § 6226(f) ....................................................................... 1

26 U.S.C. § 7483 .......................................................................... 1

42 U.S.C. § 411(a)(12) ..................................................... 18, 19, 28

DEL. CODE ANN. tit. 6, § 17-101(8) .......................................... 4

DEL. CODE. ANN. tit. 6, § 1707(a)–(b) ...................................... 26

DEL. CODE. ANN. tit. 6, § 1712 ................................................. 22

## Regulations

20 C.F.R. § 404.1080(b)(2) .................................................. 19, 25

20 C.F.R. § 404.1080(b)(3) ........................................................ 19

26 C.F.R. § 601.602(a) .............................................................. 16

## Other Authorities

62 Fed. Reg. 1702 (Jan. 13, 1997) ............................................ 20

143 CONG. REC. S6774 (June 27, 1997) ................................. 7, 20

*1978 Package X: Informational Copies of Federal Income Tax Forms*, (1978), https://babel.hathitrust.org/cgi/pt?id=uiug.30112063593435&seq=1 ...... 13

*2015 Instructions for Form 1065*, Dep't of the Treasury, IRS (2015), https://www.irs.gov/pub/irs-prior/i1065--2015.pdf ........................... 14, 15

*2016 Instructions for Form 1065,* Dep't of the Treasury, IRS (2016), https://www.irs.gov/pub/irs-prior/i1065--2016.pdf ............................ 14, 15

*2021 Instructions for Form 1065*, Dep't of the Treasury, IRS (2021), https://www.irs.gov/pub/irs-prior/i1065--2021.pdf ................................. 16

*General Explanations of the Administration's Fiscal Year 2025 Revenue Proposals*, Dep't of the Treasury (2024), https://home.treasury.gov/system/files/131/General-Explanations-FY2025.pdf............................................................................ 17

H.R. REP. NO. 95-702 (1977)........................................... 23, 27, 28

P.L. 114-74, § 1101 ................................................................. 6

*2015 Instructions for Schedule SE (Form 1040)*, Dep't of the Treasury, IRS, SE-4 (2015), https://www.irs.gov/pub/irs-prior/i1040sse--2015.pdf........ 15

*2016 Instructions for Schedule SE (Form 1040)*, Dep't of the Treasury, IRS, SE-4 (2016), https://www.irs.gov/pub/irs-prior/i1040sse--2016.pdf........ 15

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) .. 10, 23, 24, 26

BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 873 (4th ed. 2016)................. 21, 22

WALTER A. SHUMAKER, ET AL. THE CYCLOPEDIC LAW DICTIONARY (3d Ed. 1940) ..................................................... 11

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1313 (1971)................................................................................. 11

WILLIAM C. ANDERSON, A DICTIONARY OF LAW 750 (1913) ..................... 12

WILLIAM COX COCHRAN, THE LAW DICTIONARY 184 (Wesley Gilmer ed., 5th ed. 1977)........................................................ 12

# JURISDICTIONAL STATEMENT

Sirius Solutions, L.L.L.P. ("Sirius Solutions"), through its tax matters partner, Sirius Solutions GP, L.L.C. ("Sirius GP"), brought these consolidated cases in Tax Court to contest the Commissioner's determinations of its federal tax liability for its 2014–2016 tax years.[1] (ROA.16–30, ROA.2680–2702.) The Tax Court had jurisdiction over Sirius Solutions' petitions under sections 6226(a) and (f) as in effect for the years at issue.[2]

The Tax Court entered its decision resolving all claims in the consolidated cases on February 20, 2024. (ROA.2655–56, ROA.3816–18.) On May 15, 2024, Sirius Solutions timely filed its notices of appeal. *See* 26 U.S.C. § 7483. (ROA.2660–61, ROA.3822–23.) This Court has jurisdiction under section 7482(a)(1).

# STATEMENT OF THE ISSUE

The Tax Court erred in not interpreting the term "limited partner" in section 1402(a)(13) to mean a state-law limited partner consistent with the ordinary meaning of the term at the time the statute was enacted.

---

[1] The tax matters partner represents Sirius Solutions in this litigation. Thus, this brief will refer to Appellant rather than Appellants.

[2] Unless otherwise indicated, all section references are to Chapter 26 of the United States Code.

## STATEMENT OF THE CASE

### A.    Legal Background

The Internal Revenue Code imposes Social Security and Medicare taxes (self-employment taxes) on each individual's "net earnings from self-employment."  26 U.S.C. § 1402(b).  The term "net earnings from self-employment" is defined by statute and has a number of exceptions.  *Id.* § 1402(a).  Net earnings from self-employment historically included a partner's distributive share of partnership income or loss.  However, in 1977, Congress amended section 1402 to add section 1402(a)(13),[3] which expressly excludes from "net earnings from self-employment":

> the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership.

The issue in this case is the meaning of "limited partner" for purposes of the exception to self-employment tax in section 1402(a)(13).

In resolving that issue, the Tax Court applied its decision in *Soroban Capital Partners LP v. Commissioner*, Nos. 16217-22, 16218-22, 2023 WL 8235164, at *6 (T.C. Nov. 28, 2023).  In *Soroban*, the Tax Court interpreted

---

[3] This provision was initially enacted as section 1402(a)(12).  It was redesignated as 1402(a)(13) in 1983.  Pub. No. L. 98-21, § 124(c)(2), 97 Stat. 90 (1983).

the meaning of "limited partner" in section 1402(a)(13). The Tax Court looked to the legislative history and determined that Congress "intended for the phrase 'limited partners, as such' used in section 1402(a)(13) to refer to passive investors." *Id*. at *7.

The Tax Court's decision hinged on the words "as such" in the statute. It found that, "[b]y adding 'as such,' Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Id*. at *6. Thus, the Tax Court interpreted section 1402(a)(13) to require it to analyze the limited partners' activities in the partnership to determine whether they are passive investors. The Tax Court rejected the taxpayer's argument that "limited partner" should be given its ordinary meaning of a state-law limited partner. *Id*.

## B.    Sirius Solutions and its Limited Partners

The parties have stipulated that Sirius Solutions is a Delaware limited liability limited partnership that is treated as a limited partnership for all purposes of the laws of the State of Delaware. (ROA.2537.) The parties have also stipulated that its limited partners are limited partners under Delaware state law. (ROA.2537–38.)

Sirius Solutions is a business-consulting firm. (ROA.896.) During 2014, Sirius Solutions was owned by nine limited partners and a general

partner: Sirius GP. (ROA.73, ROA.1935, ROA.2537–38.) In 2015–2016, Sirius Solutions was owned by five limited partners and Sirius GP. (ROA.1935, ROA.2537–38.) All the limited partners were limited partners under Delaware law and had limited liability. (ROA.2537–38.) *See also* DEL. CODE ANN. tit. 6, § 17-101(8) (as in effect for the years in issue). The limited partners were allocated a share of Sirius Solutions' income or loss in tax years 2014–2016. (ROA.105–24, ROA.2837–54, ROA.2901–18.)

## C. Sirius Solutions' Federal Income Tax Reporting for 2014–2016

Sirius Solutions excluded the limited partners' distributive shares of partnership income from net earnings from self-employment, consistent with the plain language of section 1402(a)(13) and the instructions to the partnership income tax return (Internal Revenue Service ("IRS") Form 1065) for the years at issue. (ROA.95, ROA.2296, ROA.2304.) Those instructions provided:

> Generally, a limited partner's share of partnership income (loss) is not included in net earnings (loss) from self-employment. Limited partners treat as self-employment earnings only guaranteed payments for services they actually rendered to, or on behalf of, the partnership to the extent that those payments are payment for those services.

(ROA.926–27.) *See also infra* 14–15. The Form 1065 instructions for the years at issue defined a "limited partner" as a "partner in a partnership formed

under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." (ROA.924.) *See also infra* 14–15. The Form 1065 instructions for the years at issue defined a "limited partnership" as a partnership that "is formed under a state limited partnership law and composed of at least one general partner and one or more limited partners." (ROA.924.) *See also infra* 14–15.

Because Sirius Solutions' limited partners are limited partners in a state-law limited partnership with limited liability, Sirius Solutions followed the return instructions and excluded the limited partners' shares of Sirius Solutions' income or loss from net earnings from self-employment on its 2014–2016 returns. (ROA.95, ROA.2296, ROA.2304.)

The IRS audited Sirius Solutions' 2014–2016 tax returns and determined that the limited partners were not "limited partners" for purposes of the exception in section 1402(a)(13). (ROA.95, ROA.2296, ROA.2304.) Therefore, the IRS included the limited partners' shares of partnership income or loss in net earnings from self-employment. (ROA.95, ROA.2296, ROA.2304.) The adjustments are reflected below:

| 2014 | $5,915,918 |
| 2015 | $7,372,756 |
| 2016 | ($490,291) |

(ROA.95, ROA.2296, ROA.2304.)  The adjustments are not the ultimate tax that would be owed by the limited partners.  Instead, the adjustments would be allocated to each limited partner and taken into account in determining the limited partner's net earnings from self-employment that are subject to Social Security and Medicare tax.  Sirius GP, as the tax matters partner of Sirius Solutions, petitioned the Tax Court for review of the adjustments.  26 U.S.C. § 6226(a) (prior to 2015 amendment by P.L. 114-74, § 1101).  (ROA.16–20, ROA.2680–85.)

The Tax Court applied its decision in *Soroban* and entered its decision in favor of the Commissioner on February 20, 2024.  (ROA.2655–56, ROA.3816–18.)  Appellant timely filed notices of appeal.  (ROA.2660–61, ROA.3822–23.)  This Court reviews the Tax Court's conclusions of law on a de novo basis.  *Dresser Indus., Inc. v. Comm'r*, 911 F.2d 1128, 1132 (5th Cir. 1990).

## SUMMARY OF THE ARGUMENT

The term "limited partner" in section 1402(a)(13) must be given its ordinary meaning of a state-law limited partner for at least four reasons.  *First*,

dictionary definitions at the time of enactment confirm that the ordinary meaning of the term "limited partner" is a partner with limited liability—*i.e.*, a state-law limited partner.  *Second*, a contemporaneous interpretation by the IRS in 1978 also defined "limited partner" as a partner with limited liability.  *Third*, contemporaneous regulations for the companion provision in the Social Security Act also define the term "limited partner" as a partner with limited liability.  The IRS and Social Security Administration's interpretation of the term "limited partner" has remained consistent for decades.  An agency's interpretation of a statutory term that was "issued contemporaneously with the statute at issue, and [that has] remained consistent over time" is "especially useful" in determining the statute's meaning.  *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024).

*Fourth*, in 1997, when the IRS issued proposed regulations attempting to define "limited partner" as something other than a state-law limited partner, Congress swiftly issued a moratorium prohibiting the IRS from finalizing the proposed regulations because "the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the United States Department of Treasury [the "Treasury Department"] and would effectively change the law administratively without congressional action."  143 CONG. REC. S6774 (June

27, 1997). Thus, Congress has made clear that "limited partner" means a state-law limited partner and has reconfirmed this understanding repeatedly in steadfastly refusing to amend the statute since its enactment almost 50 years ago.

For at least four reasons, the Tax Court erred in interpreting "limited partner, as such," to mean a passive investor. *First*, the Tax Court misinterpreted the phrase "as such." Contrary to the Tax Court's analysis, a "limited partner, as such," means "a limited partner, as a limited partner." "As such" clarifies that, if a partner is both a general partner and a limited partner (a dual-status partner), the partner's distributive share received as a limited partner is subject to the exception, whereas the distributive share received as a general partner is not. The addition of "as such" after "limited partner" does not change the ordinary meaning of the term "limited partner" to passive investor.

*Second*, the Tax Court's interpretation is directly refuted by the statute's carve-out of guaranteed payments. Congress was aware that limited partners may provide services to the partnership but chose to subject only guaranteed payments for services to self-employment taxes. The Tax Court's interpretation of "limited partner" as a "passive investor" renders the carve-out for "guaranteed payments" meaningless. Under that interpretation, any

partner who provides services to the partnership would not qualify for the exception in the first place. Making the carve-out meaningless violates a fundamental canon of statutory construction that all words be given meaning.

*Third*, the Tax Court erred in considering legislative history because the term "limited partner" is unambiguous. Moreover, even if legislative history could be considered, it would support interpreting "limited partner" consistent with its ordinary meaning. The legislative history confirms that "as such" addresses dual-status partners—*i.e.*, partners that are both general partners and limited partners. Further, the legislative history reveals that the "limited partner" exception is an anti-abuse provision enacted to prevent limited partners from qualifying for Social Security. Therefore, it is unsurprising that Congress broadly drafted the provision to apply to all state-law limited partners.

*Fourth*, the Tax Court erred in applying its earlier cases involving non-state law limited partners. That case law has no bearing here, where the partner is a state-law limited partner and therefore qualifies for the exception in section 1402(a)(13) under the ordinary meaning of the term "limited partner."

In this case of first impression, this Court should reverse the Tax Court's holding that "limited partner" means a passive investor and hold that

the phrase "limited partner" in section 1402(a)(13) means a state-law limited partner, consistent with its ordinary and long-recognized meaning.

## ARGUMENT

### I. The ordinary meaning of "limited partner" in section 1402(a)(13) means a state-law limited partner.

The term "limited partner" is not defined in the Internal Revenue Code. In the absence of a statutory definition, statutory terms must be given their "ordinary meaning" at the time of enactment. *Helvering v. William Flaccus Oak Leather Co.*, 313 U.S. 247, 249 (1941) ("[T]he language in the Revenue Act, just as in any statute, is to be given its ordinary meaning… ."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (hereafter "READING LAW") at 78 (2012) (this is the "fixed-meaning canon," that directs "words must be given the meaning they had when the text was adopted"). The ordinary meaning of the term "limited partner" in 1977 under dictionary definitions and contemporaneous interpretations by the IRS and Social Security Administration is a partner with limited liability—commonly understood as a state-law limited partner, as confirmed by a later directive from Congress. Taxpayers "are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 674 (2020).

**A.** **Dictionaries at the time of enactment defined "limited partner" as a partner in a state-law limited partnership with limited liability.**

This Court "assume[s] that the plain meaning of those words [used in a statute] is the same as their ordinary (*i.e.*, 'common' or 'natural') meaning, which is often derived from dictionaries." *Vitol, Inc. v. United States*, 30 F.4th 248, 253–54 (5th Cir. 2022) (footnote omitted); *see also Schaeffler v. United States*, 889 F.3d 238, 246–47 (5th Cir. 2018). Dictionary definitions at the time of section 1402(a)(13)'s enactment defined "limited partner" as a partner with limited liability in a limited partnership formed under state law.

For example, Webster's defined a "limited partner" as "a partner whose liability to creditors of the partnership is usu[ally] limited to the amount of capital he has contributed to the partnership providing he has not held himself out to the public as a general partner and has complied with other requirements of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1313 (1971) (ROA.963.); *see also* WALTER A. SHUMAKER, ET AL., THE CYCLOPEDIC LAW DICTIONARY 640, 811 (3d ed. 1940) (defining limited partners as "members of a limited partnership whose liability is limited"). (ROA.958.)[4]

Because a partner's liability is limited by state law, the reference to limited liability necessarily means a state-law limited partner, as dictionary

---

[4] These editions remained in effect when section 1402(a)(13) was enacted.

definitions of "limited partnership" make clear.  For example, in 1977, a "limited partnership" was defined as "an unincorporated association, or firm, in which one or more of the partners are, on compliance with the provisions of various state statutes regulating such partnerships, relieved from liability beyond the amount of the capital contributed by them."  WILLIAM COX COCHRAN, THE LAW DICTIONARY 184 (Wesley Gilmer ed., 5th ed. 1977) (ROA.968.); *see also* WILLIAM C. ANDERSON, A DICTIONARY OF LAW 750 (1913) (defining a "limited partnership" as "[a]n association organized under a statute, with limited liability in some or all of the members"). (ROA.953.)[5] Thus, the ordinary meaning of "limited partner" in 1977 was a partner with limited liability in a state-law limited partnership.

## B.  The IRS issued contemporaneous guidance defining "limited partner" as a state-law limited partner.

At the time of enactment and for almost fifty years, the IRS has defined a "limited partner" as a partner with limited liability (*i.e.*, a state-law limited partner), which further confirms the ordinary meaning of the term.  An agency's interpretation of a statutory term that was "issued contemporaneously with the statute at issue, and [that has] remained

---

[5] This edition remained in effect when section 1402(a)(13) was enacted.

consistent over time" is "especially useful" in determining the statute's meaning. *Loper Bright Enters.*, 144 S. Ct. at 2262.

1978 was the first year in which net earnings from self-employment were reported following the enactment of the limited-partner exception. The 1978 partnership income tax return instructions defined a limited partner as "one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." *1978 Package X: Informational Copies of Federal Income Tax Forms*, 137 (1978), *available at* https://babel.hathitrust.org/cgi/pt?id=uiug.30112063593435&seq=1. The IRS also instructed, consistent with the express language of section 1402(a)(13), that "[l]imited partners may treat as self-employment income *only* guaranteed payments for personal services actually rendered to the partnership." *Id*. at 145 (emphasis added).

Decades after enactment, the IRS still defines "limited partner" as a state-law limited partner with limited liability. The instructions to the federal partnership income tax return for the years at issue define a "limited partner" as "a partner in a partnership formed under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to

contribute to the partnership." (ROA.924.) *See also 2015 Instructions for Form 1065*, Dep't of the Treasury, IRS, 2 (2015), https://www.irs.gov/pub/irs-prior/i1065--2015.pdf (hereafter "*2015 Instructions*"); *2016 Instructions for Form 1065,* Dep't of the Treasury, IRS, 2 (2016), https://www.irs.gov/pub/irs-prior/i1065--2016.pdf (hereafter "*2016 Instructions*"). While the Tax Court dismissed this definition in *Soroban* because it is in the "General Instructions," the instructions do not limit the use of the defined term or provide a separate definition that would otherwise apply to the self-employment instructions. The specific instructions for "Self-Employment" in Form 1065 for the years at issue use the term "limited partner" and explain:

> Generally, a limited partner's share of partnership income (loss) is not included in net earnings (loss) from self-employment. Limited partners treat as self-employment earnings only guaranteed payments for services they actually rendered to, or on behalf of, the partnership to the extent that those payments are payment for those services.

(ROA.926–27 (2014 Instructions)); *see also 2015 Instructions* at 35; *2016 Instructions* at 34.

The Tax Court in *Soroban* pointed to the word "Generally" as a qualifier that "makes clear that it is not always true that a limited partner's share of partnership income is excluded from net earnings from self-employment." *Soroban Capital*, 2023 WL 8235164, at *7. But the very next

sentence makes clear that "Generally" refers only to the carve-out for "guaranteed payments." The Form 1065 instructions explain that "[l]imited partners treat as self-employment earnings *only* guaranteed payments for services," again consistent with the express language of section 1402(a)(13). (ROA.926–27) 2014 Instructions)); *see also 2015 Instructions* at 35; *2016 Instructions* at 34.

Likewise, the instructions to the 2014–2016 Schedule SE, *Self-Employment Tax*, which is filed with an individual's income tax return, direct that "[l]imited partners should include only guaranteed payments for services actually rendered to or on behalf of the partnership" in computing self-employment tax. (ROA.932.) *See also 2015 Instructions for Schedule SE (Form 1040)*, Dep't of the Treasury, IRS, SE-4 (2015), https://www.irs.gov/pub/irs-prior/i1040sse--2015.pdf; *2016 Instructions for Schedule SE (Form 1040)*, Dep't of the Treasury, IRS, SE-4 (2016), https://www.irs.gov/pub/irs-prior/i1040sse--2016.pdf. There were no further instructions about how to determine if an individual is a limited partner, as that term had a commonly understood meaning on which individuals could rely to easily complete their tax returns.

Thus, IRS and Treasury Department guidance from the time of enactment through the years at issue and today has made clear that (1) the

ordinary meaning of the term "limited partner" is a state-law limited partner; and (2) limited partners who perform services for or participate in the partnership's business should include only guaranteed payments for services in net earnings from self-employment. These forms and instructions "explain the requirements of the Internal Revenue Code and regulations" and "help taxpayers comply with the law." 26 C.F.R. § 601.602(a).

Six months after Appellant relied on the instructions in its summary-judgment motion in the Tax Court (ROA.887–88), the IRS modified the partnership tax return instructions to include the statement "whether a partner qualifies as a limited partner for purposes of self-employment tax depends upon whether the partner meets the definition of a limited partner under section 1402(a)(13)." *2021 Instructions for Form 1065*, Dep't of the Treasury, IRS, 3, 39 (2021), https://www.irs.gov/pub/irs-prior/i1065--2021.pdf. But this opaque statement does not explain what the IRS believes the definition of "limited partner" is or how it differs from the decades-old definition in the instructions.

Despite the IRS's attempt to distance itself from its long-standing definition of "limited partner" in the tax return instructions, the Treasury Department explained even more recently that because section 1402(a)(13) refers to "limited partners," the statute looks to "the legal form" of ownership.

*General Explanations of the Administration's Fiscal Year 2025 Revenue Proposals*, Dep't of the Treasury, 73–74 (2024), https://home.treasury.gov/system/files/131/General-Explanations-FY2025.pdf. The IRS and Treasury Department's repeated statements that a "limited partner" is a state-law limited partner are diametrically opposed to the IRS's litigating position, making it difficult for taxpayers to even know about, let alone comply with, the IRS's interpretation of the term "limited partner" in this case.

This Court should reject the IRS's attempt to now disavow its guidance of almost 50 years. When "the government has repeatedly issued guidance to the public at odds with the interpretation it now asks [the Court] to adopt," that "counts as one more reason yet to question whether [the government's] current position represents the best view of the law." *Bittner v. United States*, 598 U.S. 85, 97 (2023). After all, "when the government (or any litigant) speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one." *Id*. at 97 n.5. This Court should apply the construction of section 1402(a)(13) that "is consistent with a basic approach the Commissioner himself once viewed as interpretively correct and workable in practice." *Rawat v. Comm'r*, No. 23-1142, 2024 WL 3504510, at *12 (D.C. Cir. July 23, 2024).

## C. The Social Security Administration issued contemporaneous guidance defining "limited partner" as a state-law limited partner.

The definition of "net earnings from self employment" also determines an individual's eligibility for Social Security and coverage. Therefore, at the same time that Congress amended the Internal Revenue Code to add section 1402(a)(13), it also amended the Social Security Act to exclude from Social Security eligibility and coverage:

> the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) of the Internal Revenue Code of 1954 to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

42 U.S.C. § 411(a)(12) (1977).

The Internal Revenue Code and Social Security Act provisions are identical, except that the Social Security Act includes an express reference to the Internal Revenue Code to clarify the cross-reference to section 707(c). Because they are companion provisions concerning the same issue and enacted by the same legislature at the same time, the two provisions must be construed together (*in pari materia*). *See Gen. Motors Acceptance Corp. v. Whisnant*, 387 F.2d 774, 775 (5th Cir. 1968). This canon of statutory construction reflects that "a legislative body generally uses a particular word

with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972).

One year after section 1402(a)(13) and 42 U.S.C. § 411(a)(12) were enacted, the Social Security Administration proposed regulations addressing the limited-partner exception for purposes of Social Security eligibility and coverage. These regulations were finalized in 1980 and remain in effect today. The applicable regulation provides: "You are a 'limited partner' if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership." 20 C.F.R. § 404.1080(b)(3).[6] As explained above, because liability is limited under state law, a partner with limited liability is a state-law limited partner.

Like the IRS's instructions, the regulation's contemporaneous definition of "limited partner" is particularly useful in understanding the meaning of the term. *See supra* 12–17. The exception to self-employment taxes and the corresponding exception from Social Security eligibility must be construed together.

---

[6] The regulation goes on to explain that "[g]enerally, you will not have to perform services." 20 C.F.R. § 404.1080(b)(3). "[Y]ou will not have to" does not mean "you are prohibited from" performing services and implies that a limited partner may do so. And if services are performed, a limited partner's distributive share is included in net earnings from self-employment only if it is a guaranteed payment. *Id*. § 404.1080(b)(2).

**D. Congress rejected the Treasury Department's later attempt to define "limited partner" as something other than a state-law limited partner and declined to amend the statute.**

Not only do contemporaneous interpretations and definitions make clear that the ordinary meaning of the term "limited partner" is a state-law limited partner, Congress rejected the Treasury Department's attempt to define "limited partner" as something other than a state-law limited partner. In 1997, the Treasury Department proposed regulations that would have defined a "limited partner" for purposes of section 1402(a)(13) using a three-prong test that ignored whether an individual was a limited partner under state law. 62 Fed. Reg. 1702, 1704 (Jan. 13, 1997).

Congress imposed a moratorium on finalizing such regulations (the "1997 Moratorium"), with the Senate passing a resolution that "the Senate is concerned that the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the Treasury Department and would effectively change the law administratively without congressional action." 143 CONG. REC. S6774 (June 27, 1997). (ROA.908.) Further, "Congress, not the Department of the Treasury or the Internal Revenue Service, should determine the tax law governing self-employment income for limited partners." *Id*. Thus, the 1997 Moratorium made clear Congress's view that "limited partner" for purposes

of section 1402(a)(13) means a state-law limited partner, and Congress had not conferred "authority" on the Treasury Department or IRS to decide otherwise. *See Loper Bright Enters.*, 144 S. Ct. at 2268.

Congress's failure to adopt the Treasury Department's definition of a "limited partner" suggests that Congress "made a considered judgment to retain the relevant statutory text." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015). Since enacting section 1402(a)(13) in 1977, Congress never altered the term "limited partner" or made any payments to limited partners subject to self-employment taxes, other than guaranteed payments.

## II. The Tax Court erred by interpreting "limited partner" to mean a partner functioning as a passive investor.

### A. The Tax Court misinterprets the phrase "as such."

Rejecting a plain textualist reading of the term "limited partner," the Tax Court in *Soroban* interpreted the phrase "limited partner, as such" to refer to a partner that is "functioning as" a passive investor. But the phrase "as such" does not mean "functioning as," and it cannot change the ordinary meaning of the term "limited partner" to a "passive investor."

The phrase "as such" has a well-understood plain meaning: The word "such" is a "pointing word that must refer to a clear antecedent"; "as such" means "as [the antecedent]." Bryan A. Garner, GARNER'S MODERN ENGLISH

- 21 -

USAGE 873 (4th ed. 2016); *see also Boechler, P.C. v. Comm'r*, 596 U.S. 199, 200 (2022) (under the last-antecedent rule, the correct antecedent is usually the closest reasonable one); *D.G. ex rel. LaNisha T. v. New Caney Indep. Sch. Dist.*, 806 F.3d 310, 317 (5th Cir. 2015) ("As a general matter, '[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.'"). Therefore, "a limited partner, as such," means "a limited partner, as a limited partner."

The "as such" language was necessary because in 1977, as today, the same person could be both a general partner and a limited partner of a partnership. *E.g.*, DEL. CODE. ANN. tit. 6, § 1712 (1977). Congress appreciated that a particular partner could wear two hats — general partner and limited partner — with respect to the same partnership and distinguished between them with the inclusion of the phrase "as such." Congress excluded the distributive share received as a limited partner but not the distributive share of that same partner received as a general partner. Absent this language, the statute would be ambiguous as to whether a limited partner's distributive share would be exempt if that partner was also a general partner.

While the text of the statute is clear and there is no need to resort to legislative history, the legislative history confirms that the phrase "as such" refers to dual-status partners and does not prescribe a functional test to

determine whether limited partners are passive investors. The House Report states as follows:

> Under the bill the distributive share of income or loss received by a limited partner from the trade or business of a limited partnership would be excluded from social security coverage … . Distributive shares received as a general partner would continue to be covered. Also, if a person is both a limited partner and a general partner in the same partnership, the distributive share received as a general partner would continue to be covered under present law.

H.R. REP. NO. 95-702, pt. I, at 40 (1977). There is no other language in the statute that effectuates this result for dual-status partners other than the phrase "as such." Thus, the phrase "limited partner, as such" necessarily refers to the treatment of dual-status partners and not to the roles and functions of a limited partner.

## B. The Tax Court's interpretation violates a canon of statutory interpretation by rendering the carve-out for "guaranteed payments" meaningless.

The Tax Court's interpretation violates the fundamental canon of statutory interpretation that words may not be rendered surplusage or meaningless. *Howard Hughes Co., L.L.C. v. Comm'r*, 805 F.3d 175, 183 (5th Cir. 2015) (quoting *Hibbs v. Winn*, 542 U.S. 88, 89 (2004)) ("[I]n statutory interpretation we generally follow 'the rule against superfluities, [which] instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous.'"); READING LAW at 174 ("If possible, every

word and every provision is to be given effect… . None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). Section 1402(a)(13) excludes a limited partner's share of partnership income or loss from net earnings from self-employment but does not exclude guaranteed payments for services rendered. 26 U.S.C. § 1402(a)(13). The Tax Court's interpretation of "limited partner" as a partner functioning as a "passive investor" makes the carve-out for "guaranteed payments" meaningless.

Under the Tax Court's interpretation, a partner who provides services to the partnership would cease to qualify as a "limited partner" for purposes of section 1402(a)(13) and its distributive share would become subject to self-employment taxes. But section 1402(a)(13) is clear that a limited partner's share of partnership income received for services is subject to self-employment taxes *only* if it is a guaranteed payment described in section 707(c):

> the distributive share of any item of income or loss of a limited partner, as such, *other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership*.

26 U.S.C. § 1402(a)(13) (emphasis added). Under section 707(c), guaranteed payments for services are payments "determined without regard to the income of the partnership." 26 U.S.C. § 707(c). The Tax Court's interpretation makes

any payment to a partner for services subject to self-employment tax regardless of whether the payment is a "guaranteed payment." This interpretation renders twenty-two words in section 1402(a)(13) meaningless.

Although the Tax Court uses the canon against surplusage to justify its interpretation of "as such" (which as explained above addresses dual-status partners, when properly interpreted), it fails to acknowledge that its decision renders the twenty-two-word carve-out for "guaranteed payments" meaningless. *Soroban Capital*, 2023 WL 8235164, at *6.

The Social Security regulations also make clear that a limited partner's distributive share is "included in your net earnings from self-employment if [t]he amount is payable to you for services you render to or on behalf of the partnerships[] ***and*** [i]t is a guaranteed payment described in section 707(c) of the Code." 20 C.F.R. § 404.1080(b)(2) (emphasis added). It is not enough for the distributive share to be payable for services rendered. Thus, the Social Security regulations allow a limited partner to provide services and still qualify for the exception in section 1402(a)(13).

Further, the carve-out for "guaranteed payments" confirms that Congress was aware at the time of enactment that limited partners may provide services to the partnership, but it chose to make *only* "guaranteed payments" for those services subject to self-employment taxes. This is

consistent with the law governing state-law limited partners at the time of enactment—they could actively participate in the business. For example, Delaware law expressly permitted partners to perform services to or for the partnership, allowed a partner to act as both a limited partner and general partner, and included safe harbors that allowed limited partners to participate significantly in the business. DEL. CODE. ANN. tit. 6, § 1707(a)–(b) (1977).

Furthermore, in section 1402 itself, Congress chose to exclude from self-employment tax amounts received by a retired partner if "such partner rendered *no services* with respect to any trade or business carried on by such partnership." 26 U.S.C. § 1402(a)(10) (1968) (emphasis added). This provision was enacted almost 10 years before section 1402(a)(13), yet Congress chose not to use the same "no services" language in section 1402(a)(13). Congress instead chose to allow a limited partner to provide services and made payments for those services subject to self-employment taxes only if they qualified as guaranteed payments under section 707(c). It is "[a] familiar principle of statutory construction … that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006); *see also* READING LAW at 107 ("The expression of one thing implies the exclusion of others.").

## C. The Tax Court erroneously resorted to the legislative history when the statute is unambiguous.

To bolster its faulty statutory interpretation of "as such," the Tax Court resorted to the legislative history. But this Court has been clear that "[i]n the absence of any ambiguity, our examination is confined to the words of the statute, which are assumed to carry their ordinary meaning." *Schaeffler*, 889 F.3d at 242 (citing *Stanford v. Comm'r*, 152 F.3d 450, 456 (5th Cir. 1998)). "[M]ining legislative history ... is highly disfavored in the Fifth Circuit... ." *Thomas v. Reeves*, 961 F.3d 800, 817 n.45 (5th Cir. 2020) (en banc) (Willett, J., concurring) (emphasis omitted) (collecting cases). The Fifth Circuit turns to legislative history "[o]nly after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous." *Schaeffler*, 889 F.3d at 242 (quoting *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008)). Because the term "limited partner" in section 1402(a)(13) is unambiguous, legislative history is irrelevant.

But even if considered, as explained above, legislative history refutes the Tax Court's erroneous interpretation of "as such." Instead, it confirms that "as such" refers to dual-status partners that hold both a general-partner and limited-partner interest. H.R. REP. NO. 95-702, pt. I, at 40. The statute excludes the distributive share of a partner in its capacity as a limited partner

but does not exclude the distributive share of that same partner in its capacity as a general partner.

In addition, the legislative history supports giving "limited partner" its ordinary meaning of a state-law limited partner with limited liability. The committee report provided that Congress was "concerned about situations in which certain business organizations solicit investments in limited partnerships as a means for an investor to become insured for social security benefits." H.R. REP. NO. 95-702, pt. I, at 40–41. Individuals paid a small amount of self-employment tax and thereby qualified for future Social Security benefits. The limited-partner exception in 42 U.S.C. § 411(a)(12) was broadly drafted to curb this perceived abuse. The substantially identical exception in section 1402(a)(13) conformed self-employment taxes to Social Security eligibility. Because state-law limited partners would not be eligible for Social Security due to 42 U.S.C. § 411(a)(12), they would also not be required to pay self-employment taxes.

Further, if Congress intended the exception to apply to passive investors it would have said so. Congress has enacted more than 30 provisions in the Internal Revenue Code using the term "passive," including before the enactment of the limited-partner exception. *See, e.g.*, 26 U.S.C.

§ 1372(e)(5)(A), (C) (1966) ("passive investment income"); 26 U.S.C. § 4943(d)(4)(B) (1969) ("passive sources").

Alternatively, Congress could have expressly prohibited a limited partner from providing any services in order to be exempt from self-employment taxes, as it did for the exception in section 1402(a)(10), discussed above. Despite the many plain language alternatives Congress could have used to apply a "passive investor" test, Congress declined to do so and instead chose to apply the exception to a "limited partner" and to create the carve-out for "guaranteed payments." This Court should therefore apply the ordinary meaning of the term "limited partner" as reflected in dictionary definitions and almost fifty years of guidance from the IRS and Social Security Administration.

### D. The Tax Court applied irrelevant and non-binding case law involving non-state law limited partners.

As the Tax Court acknowledged, prior Tax Court cases on which it relied did not involve limited partners in a state-law limited partnership. *Soroban Capital*, 2023 WL 8235164, at *6. The Tax Court's 2011 decision applying a functional test in *Renkemeyer, Campbell & Weaver, LLP v. Commissioner* involved a Kansas limited liability partnership, which was a general partnership for state law purposes. 136 T.C. 137, 146 (2011); *see also Castigliola v. Comm'r*, T.C. Memo. 2017-62 (involving a professional limited

liability company); *Hardy v. Comm'r*, T.C. Memo. 2017-16 (involving a limited liability company). Partners in a state-law general partnership and members in a limited liability company or professional limited liability company are not limited partners. Therefore, to determine whether these partners or members qualified for the exception, the Tax Court applied a functional analysis to determine whether the partner was "akin to … a passive investor." *Renkemeyer*, 136 T.C. at 148. The analysis applied in those cases, which are not binding on this Court, does not apply when the partner is, in fact, a limited partner.

The only court to address state-law limited partners before *Soroban* is the Third Circuit in *Hough v. Commissioner*, 82 A.F.T.R.2d 98-5263 (3d Cir.), *aff'g* T.C. Memo. 1997-361. There, the Third Circuit held that a state-law limited partner could not include limited-partnership losses in net earnings from self-employment because "section 1402(a)(13) specifically excludes from the calculation of net earnings from self-employment a limited partner's distributive share of income or loss from partnership." 82 A.F.T.R.2d 98-5263 at 5266. *Hough* is persuasive authority because the Third Circuit did not engage in an analysis of whether the state-law limited partner was a passive investor but instead accepted the ordinary meaning of a state-law limited partner, as this Court should do.

## CONCLUSION

This Court should reverse the Tax Court and hold that "limited partner" in section 1402(a)(13) has its ordinary meaning of a state-law limited partner. Dictionary definitions and contemporaneous and long-held guidance from the IRS and Social Security Administration all confirm that the ordinary meaning of the term "limited partner" is a state-law limited partner. Congress rejected the Treasury Department's later attempt to define "limited partner" as something other than a state-law limited partner. This Court should likewise reject the Tax Court's interpretation. It disregards the ordinary meaning of both "limited partner" and "as such," violates a fundamental canon of statutory construction by rendering the carve-out for "guaranteed payments" meaningless, erroneously relies on legislative history, and applies irrelevant case law involving non-state law limited partners.

Dated: August 12, 2024

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Meghan McCaig*
     Mary A. McNulty
     Lee S. Meyercord
     Meghan McCaig
     Richard B. Phillips, Jr.

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201

**Counsel for Appellants**

## CERTIFICATE OF SERVICE

I certify that on August 12, 2024, a true and correct copy of the foregoing was served on all parties and all counsel of record via the Court's CM/ECF system, and all parties and counsel have consented to service by this means.

*/s/ Meghan McCaig*
Meghan McCaig

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1:  this document contains 6,501 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point, Times New Roman font.

*/s/ Meghan McCaig*
Meghan McCaig