No. 24-60240

# In the United States Court of Appeals for the Fifth Circuit

---

SIRIUS SOLUTIONS, L.L.L.P.;
SIRIUS SOLUTIONS GP, L.L.C.; TAX MATTERS PARTNER,

*Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

---

On Appeal from the United States Tax Court,
No. 11587-20 & No. 30118-21

## BRIEF OF AMICUS CURIAE THE REAL ESTATE ROUNDTABLE, INC. IN SUPPORT OF PETITIONERS-APPELLANTS AND REVERSAL

Of Counsel:

Ryan P. McCormick
THE REAL ESTATE ROUNDTABLE, INC.
801 Pennsylvania Ave. N.W., Suite 720
Washington, D.C. 20004
Tel: (202) 639-8400

August 19, 2024

David M.J. Rein
David C. Spitzer
Isaac J. Wheeler
Mark A. Popovsky
Zachary R. Ingber
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000

*Counsel for Amicus Curiae*
*The Real Estate Roundtable, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), The Real Estate Roundtable, Inc. states that it is not a subsidiary of any other corporation. The Real Estate Roundtable, Inc. is a nonprofit trade group that has no shares or securities that are publicly traded.[1]

---

[1] The parties to this appeal have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). No counsel for a party authored this brief in whole or in part and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that, in addition to the persons and entities identified in Petitioners-Appellants' Certificate, the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 of the Rules of this Court have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

**Amicus Curiae:**

The Real Estate Roundtable, Inc. is not a subsidiary of any other corporation and has no shares or securities that are publicly traded.

**Counsel for Amicus Curiae:**

Of Counsel:

Ryan P. McCormick
THE REAL ESTATE ROUNDTABLE, INC.
801 Pennsylvania Ave. N.W., Suite 720
Washington, D.C. 20004
Tel: (202) 639-8400

David M.J. Rein
David C. Spitzer
Isaac J. Wheeler
Mark A. Popovsky
Zachary R. Ingber
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000

/s/ David M.J. Rein
David M.J. Rein
Counsel for Amicus Curiae
August 19, 2024

# TABLE OF CONTENTS

*Page*

**STATEMENT OF IDENTITY** ................................................................. 1

**INTRODUCTION** ................................................................................ 3

**ARGUMENT** ...................................................................................... 8

**LIMITED PARTNERS HAVE NEVER BEEN RESTRICTED TO "PASSIVE INVESTORS" UNDER APPLICABLE STATE LAW** ..... 8

    A.    Limited Partnerships Are Created Under State Law, Which Governs the Scope of Liability Protections ................ 8

    B.    State Courts Have Long Construed State Limited Partnership Law to Permit Limited Partners to Provide Services to the Partnership ..................................... 10

    C.    RULPA and Other State Law in 1977 Did Not Impose a "Passive Investor" Standard on Limited Partners .............. 13

    D.    Treasury's 1994 Proposed Regulations Reaffirmed That Limited Partners Are Not Restricted to Passive Investor Roles ....................................................................... 16

**CONCLUSION** .................................................................................. 18

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*City of Milwaukee* v. *Illinois*,
451 U.S. 304 (1981) ................................................................. 9

*Frigidaire Sales Corp.* v. *Union Properties, Inc.*,
562 P.2d 244 (Wash. 1977) .................................... 11, 12, 16

*Graham* v. *Milky Way Barge, Inc.*,
824 F.2d 376 (5th Cir. 1987) ................................................. 9

*Grainger* v. *Antoyan*,
313 P.2d 848 (Cal. 1957) ..................................................... 11

*Johnson* v. *Comm'r*,
60 T.C.M. (CCH) 603 (1973) ......................................... 8, 10

*Newport Ltd.* v. *Sears, Roebuck & Co.*,
941 F.2d 302 (5th Cir. 1991) ................................................. 8

*Occidental Chem. Corp.* v. *Elliott Turbomachinery Co.*,
84 F.3d 172 (5th Cir. 1996) ................................................... 9

*Perry* v. *Comm'r*,
67 T.C.M. (CCH) 2966 (1994) ............................................ 10

*Renkemeyer, Campbell & Weaver, LLP* v. *Comm'r*,
136 T.C. 137 (2011) ............................................................ 13

*Sanders* v. *Comm'r*,
161 T.C. No. 8 (Nov. 2, 2023) ............................................... 4

*Silvola* v. *Rowlett*,
272 P.2d 287 (Colo. 1954) .............................................. 10, 11

*Soroban Capital Partners, LP* v. *Comm'r*,
161 T.C. No. 12 (Nov. 28, 2023) ................................. *passim*

# TABLE OF AUTHORITIES
*(continued)*

*Page(s)*

## Federal and State Statutes

26 U.S.C. § 761(a)–(b)....................................................................9

26 U.S.C. § 7701(a)(2)....................................................................9

26 U.S.C. § 1402(a)(13)........................................................... *passim*

59 Del. Law c. 105 (1973) ........................................................ 13, 14

Revised Uniform Limited Partnership Act of 1976....................... *passim*

Social Security Amendments of 1977, 91 Stat. 1509 (1977).......... *passim*

Taxpayer Relief Act of 1997, 111 Stat. 788 (1997) ................................ 18

Uniform Limited Partnership Act of 1916.................................................8

## Miscellaneous

143 Cong. Rec. S6694 (daily ed. June 27, 1997) ................................... 18

Comment, *Standing of Limited Partners to Sue Derivatively*,
65 Colum. L. Rev. 1463 (1965)...............................................9

Definition of Limited Partner for Self-Employment Tax
Purposes, 62 Fed. Reg. 1702 (Jan. 13, 1997)......................................18

Eric Hilt & Katharine O'Banion, *The Limited Partnership in
New York, 1822-1858: Partnerships Without Kinship*, 69
J. Econ. Hist. 615 (2009).......................................................8

J. William Callison & Maureen A. Sullivan, Partnership Law
and Practice § 18:1 (Nov. 2023) ...............................................9

Joseph J. Bastile Jr., *1985 Delaware Revised Uniform
Limited Partnership Act*, 41 Bus. Law. 571 (1986)...........................14

## TABLE OF AUTHORITIES
### (*continued*)

*Page(s)*

Self-Employment Tax Treatment of Members of Certain
Limited Liability Companies, 59 Fed. Reg. 67,253 (Dec.
29, 1994) ........................................................................ 6, 17

## STATEMENT OF IDENTITY

The Real Estate Roundtable, Inc. ("The Roundtable") brings together leaders of the nation's top publicly held and privately owned real estate ownership, development, lending, and management firms with the leaders of major national real estate trade associations to jointly address key national policy issues relating to real estate and the overall economy. By identifying, analyzing, and coordinating policy positions, The Roundtable's business and trade association leaders seek to ensure that a cohesive industry voice is heard by government officials and the public about real estate and its role in the global economy. The Roundtable itself also takes an active role in policy issues.[2]

The issues raised in this appeal, which concern the taxation of limited partners, are of profound importance to The Roundtable, the real estate industry, and the broader economy. Income-producing real estate—rental housing, neighborhood shopping centers, office buildings, etc.—is predominantly owned and operated in partnership form. Real estate partnerships come in all forms and sizes, ranging from two

---

[2]   The Roundtable and its counsel acknowledge the assistance of members of The Roundtable's President's Council, The Roundtable's Tax Policy Advisory Committee, and Don Susswein, who each contributed valuable insight and analysis that assisted the drafters of this brief.

individuals owning a single rental property to large, professionally managed real estate businesses. In 2021, there were over 2.1 million real estate partnerships in the United States, with nearly 9.7 million partners.[3] Real estate partnerships represent close to 50 percent of all partnerships in the country.[4] Similarly, nearly half of all domestic limited partnerships are real estate partnerships.[5] The approximately 216,000 real estate limited partnerships in the United States include more than 1.8 million partners and generate an average income of $95,000 per partner.[6] The average real estate limited partnership has fewer than ten partners.

Collectively, real estate partnerships engage in construction, development, property management, and other activities that contribute to over 15 million real estate-related jobs, $2.3 trillion of annual

---

[3] Ron DeCarlo, Tuba Ozer-Gurbuz & Nina Shumofsky, *Partnership Returns, Tax Year 2021*, IRS Stat. of Income Bull. (Fall 2021) at 3, Fig. B.

[4] *Id.* at 1.

[5] *See Table 8: Domestic General Partnerships, Limited Partnerships and Limited Liability Companies: Selected Items, by Industrial Group*, IRS (last visited Aug. 16, 2024), https://tinyurl.com/34z5asr5 (choose 2020-2021 Tax Year).

[6] *Id.*

economic output, and $559 billion of annual local property taxes, as well as the strength and solvency of pension funds, school endowments, and charitable foundations.[7] Partnerships in the real estate industry must comply with layers of federal, state, and local laws, including provisions of the federal tax code. The Roundtable therefore has an interest in the proper interpretation and implementation of the tax rules governing limited partnerships. Given its members' extensive experience in conducting business through limited partnerships, The Roundtable offers the following brief to aid the Court's analysis.

## INTRODUCTION

Congress used the term "limited partner" in Section 1402(a)(13) of the Internal Revenue Code (the "Code") but did not define that term. This is no accident. Limited partnerships have long been creatures of state law. As a result, federal courts interpreting Section 1402(a)(13) must look to state law to construe the meaning of "limited partner." *See* Appellants' Br. at 10–18.

---

[7] *See Commercial Real Estate By The Numbers: 2023*, The Real Estate Roundtable, 6–8 (2023), https://tinyurl.com/2skftepj.

The Tax Court here failed to follow that principle. The Court entered a final judgment based on *Soroban Capital Partners, LP* v. *Commissioner*, 161 T.C. No. 12 (Nov. 28, 2023). In *Soroban*, the Tax Court interpreted Section 1402(a)(13)'s limited partner exception, which was enacted in the Social Security Amendments of 1977 (the "1977 Amendments"), Pub. L. No. 95-216, § 313(b), 91 Stat. 1509, 1536 (1977). *Soroban* held that the Code term "'limited partners, as such' . . . refer[s] to . . . partners that are passive investors." 161 T.C. No. 12, at *7. By following *Soroban*, the Tax Court committed error.[8]

Critically, *Soroban*'s conclusion was not grounded in state limited partnership law, which has never incorporated a "passive investor" restriction. In fact, there is no question that, when the 1977 Amendments were enacted, long-established state law permitted limited partners to engage in a broad range of partnership-related business activities, including providing services to the partnership, while still

---

[8] Unlike district courts, the Tax Court's practice is to follow other Tax Court decisions under *stare decisis*. *See Sanders* v. *Comm'r*, 161 T.C. No. 8, at *4 (Nov. 2, 2023) ("The Tax Court . . . adhere[s] to the doctrine of stare decisis and thus affords precedential weight to its prior reviewed and division opinions.").

-4-

retaining their status as limited partners. *Soroban*'s imposition of a
"passive" requirement, which is found nowhere in the statute, rests on a
fundamental misunderstanding of state limited partnership law on
which business organizations and their participants, including The
Roundtable's members, have relied for many decades. For at least these
reasons, the Tax Court should be reversed.

*First*, as a result of the 1977 Amendments, the Code uses the
state-law term "limited partner" in Section 1402(a)(13). At the time of
the 1977 Amendments, the term "limited partner" had no common
meaning outside of state law. As a result, the scope of that term has been
fully defined by state courts, and it is not the role of a federal court to
define the scope differently, as the Tax Court did in *Soroban* and here.

*Second*, in the years leading up to the 1977 Amendments, the
highest courts in several states addressed the scope of permissible
limited partner activities, as compared with the activities of general
partners. Those courts did not require that the limited partner be
"passive," but instead held that providing significant business services to

a limited partnership did not cause a limited partner to lose its status as a limited partner under state law.

*Third*, the widely adopted text of the Revised Uniform Limited Partnership Act of 1976 ("RULPA") codified this longstanding consensus among state courts, including a safe-harbor provision expressly listing numerous examples of business services that limited partners could provide to the partnership without losing their limited liability status under state law.

*Fourth*, the U.S. Department of the Treasury and the Internal Revenue Service have themselves recognized that state law governs the standards for qualifying as a limited partner. For example, in 1994, Treasury and the IRS proposed regulations under Section 1402(a)(13) clarifying that a member of a limited liability company or other entity will be treated as a limited partner if "[t]he entity could have been formed as a limited partnership . . . in the same jurisdiction, and the member could have qualified as a limited partner in that limited partnership under applicable law." Self-Employment Tax Treatment of Members of Certain Limited Liability Companies, 59 Fed. Reg. 67,253 (Dec. 29,

1994).  Those proposed regulations underscore that Treasury and the IRS shared the well-settled understanding that the "applicable law" of limited partnerships—a body of law developed by states—governed which services limited partners could provide to a partnership without putting their liability protections at risk.

In short, the meaning of "limited partner" in Section 1402(a)(13) is found in state law.  That law has never imposed the requirement in *Soroban* that limited partners' role must be "passive."  Instead, state law in the run-up to the 1977 Amendments tells an entirely different story—one that remains true today:  limited partners have routinely provided key business services to their partnerships without losing their limited liability status.  Indeed, Congress took this common and well-known practice into account when it included in the text of Section 1402(a)(13) a special rule for limited partners who were providing services to the partnership in return for a salary-like guaranteed payment.  Ignoring this established body of state limited partnership law, *Soroban* imposed a judge-made test and concluded contrary to decades of established state law that a limited partner must

be a "passive investor."  The Tax Court followed that same approach in this case.  Given this fundamental error at the heart of the ruling, and for the additional reasons set forth in Appellants' Brief, this Court should reverse the judgment of the Tax Court.

## ARGUMENT

## LIMITED PARTNERS HAVE NEVER BEEN RESTRICTED TO "PASSIVE INVESTORS" UNDER APPLICABLE STATE LAW.

### A.  Limited Partnerships Are Created Under State Law, Which Governs the Scope of Liability Protections.

Limited partnerships have existed in the United States for more than 200 years as "creatures of agreement cast in the form prescribed by State law."  *Johnson* v. *Comm'r*, 60 T.C.M. (CCH) 603 (1973).  New York was the first common law state to permit limited partnerships, and other states subsequently followed.[9]  The Uniform Limited Partnership Act was drafted in 1916 to establish consistency in

---

[9]     *See Newport Ltd.* v. *Sears, Roebuck & Co.*, 941 F.2d 302, 305 n.3 (5th Cir. 1991); Eric Hilt & Katharine O'Banion, *The Limited Partnership in New York, 1822-1858: Partnerships Without Kinship*, 69 J. Econ. Hist. 615, 615–16 (2009).

state standards.[10]  As a result, over many decades, state law has supplied the applicable law for limited partnerships.

Although Section 1402(a)(13) employs the term "limited partner," Congress did not provide a definition.[11]  Given the long-established nature of limited partnerships under state law, there would have been no reason for Congress to provide a definition.  Nor would there be any reason for a federal court to create a new federal definition.  "[I]f state law can be applied, there is no need for federal common law."  *City of Milwaukee* v. *Illinois*, 451 U.S. 304, 313 n.7 (1981); *see also Occidental Chem. Corp.* v. *Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996) ("As a federal court, it is not for us to adopt innovative theories of state law, but simply to apply the law as it currently exists." (quoting *Graham* v. *Milky Way Barge, Inc.*, 824 F.2d 376, 381 (5th Cir. 1987))).  Following this approach, federal courts have repeatedly applied state law

---

[10]     *See* Comment, *Standing of Limited Partners to Sue Derivatively*, 65 Colum. L. Rev. 1463, 1465 & n.20 (1965); *see also* J. William Callison & Maureen A. Sullivan, Partnership Law and Practice § 18:1 (Nov. 2023).

[11]     By contrast, Congress expressly defined "partnership" and "partner" in the Code, *see* 26 U.S.C. §§ 7701(a)(2), 761(a)–(b), underscoring its conscious choice to rely on state law for the meaning of "limited partner."

to determine limited partner status under Section 1402(a)(13). *See, e.g.*, *Johnson*, 60 T.C.M. (CCH) 603 (applying Texas law); *Perry* v. *Comm'r*, 67 T.C.M. (CCH) 2966 (1994) (applying Texas and Louisiana law).

## B. State Courts Have Long Construed State Limited Partnership Law to Permit Limited Partners to Provide Services to the Partnership.

In the period leading up to the 1977 Amendments, state courts across the nation held that limited partners can actively engage in the partnership without losing their limited liability protections.

In *Silvola* v. *Rowlett*, 272 P.2d 287 (Colo. 1954) (*en banc*), for example, the Colorado Supreme Court held that a limited partner in a limited partnership operating an automobile repair shop did not lose limited liability protection by providing important services to the business. These included serving as the shop's foreman, making purchasing decisions, and providing advice to the general partner on business transactions. *Id.* at 290–91. The court explained that the "[d]efendant, being interested in the success of the partnership business, did not thereby forfeit his right to make suggestions or express opinions as to the advisability of transactions when his suggestion or opinion was

sought by the general partner." *Id.* In stark contrast to *Soroban*'s "passive investor" requirement that the Tax Court followed here, the Colorado Supreme Court explained that Colorado limited partnership law "[did] not impose silence on a limited partner." *Id.* at 291.

The Supreme Court of California in *Grainger* v. *Antoyan*, 313 P.2d 848 (Cal. 1957) (*en banc*), similarly did not impose a "passive investor" standard. In *Grainger*, a limited partner acted as a sales manager for the partnership, extended a loan to the partnership, and leased commercial property to the partnership. *Id.* at 849–50, 852–53. Notwithstanding the limited partner's active engagement in the business activities of the limited partnership, the Supreme Court of California concluded that "there was no activity or action upon the part of defendant that would make him subject to" general liability. *Id.* at 853.

Further, in *Frigidaire Sales Corp.* v. *Union Properties, Inc.*, 562 P.2d 244, 245 (Wash. 1977) (*en banc*), the Washington Supreme Court held that limited partners who also served as the "officers, directors, and shareholders of [the partnership's] corporate general partner" were still protected as limited partners under state law, even

-11-

though they exercised "day-to-day control and management" of the partnership. *Id.* at 245–47. The court explained that the limited partners acted solely "in their capacities as agents for their principal, the corporate general partner." *Id.* at 247. Thus, despite active involvement in the partnership's business activities, the court concluded "there is no reason for us to find that [the limited partners] incurred general liability for their acts done as officers of the corporate general partner." *Id.*

As these cases confirm, in the period leading up to the 1977 Amendments, state law did not impose any kind of "passive investor" requirement for limited partners.[12] *Soroban*'s conclusion that "Congress . . . intended for the phrase 'limited partners, as such' . . . to refer . . . to partners that are passive investors," 161 T.C. No. 12, at *7, is directly refuted by these state appellate court decisions. Far from imposing a "passive investor" standard, these decisions reflect an array of (non-

---

[12] Other state limited partnership cases during this period held that a limited partner could lose its limited liability protection by controlling or managing the partnership. But those cases do not suggest that limited partners are prohibited from providing any services to the limited partnership and must act as "passive investors," as *Soroban* erroneously concluded. *See infra* note 16.

passive) activities in which a limited partner could engage to support the business of the partnership while retaining its limited liability protection.[13]

## C. RULPA and Other State Law in 1977 Did Not Impose a "Passive Investor" Standard on Limited Partners.

In the period before and after the 1977 Amendments, states codified their limited partnership law in ways that further demonstrate the Tax Court's error in *Soroban* and here in concluding that limited partners must be "passive investors."

In 1973, for example, Delaware enacted its limited partnership statute and expressly listed a wide variety of non-passive activities in which a limited partner could engage without losing liability protection. These included that limited partners can "consult with and advise the general partner(s) as to the conduct of the business"; "act as surety for the partnership"; "elect or remove a general partner";

---

[13]    The Tax Court's judgment relied on *Soroban*, and *Soroban*, in turn, pointed to *Renkemeyer, Campbell & Weaver, LLP* v. *Commissioner*, 136 T.C. 137 (2011), in support of its conclusion. But *Renkemeyer* did not address limited partnerships. Rather, it considered whether members of other types of entities should be treated as limited partners under Section 1402(a)(13). *See* Appellants' Br. at 29–30. To the extent the *Renkemeyer* opinion discusses limited partnerships, it is *dicta*.

"terminate the partnership"; "amend the partnership agreement"; and "approve or disapprove such material matters related to the business of the partnership" as provided in the partnership agreement without losing limited liability protection.  59 Del. Law c. 105 (1973).

Then, in 1976, RULPA was published, as an updated model limited partnership statute that encapsulated and clarified the prevalent then-existing state limited partnership law.  RULPA made clear that, standing alone, providing services to a partnership does not disqualify a limited partner's limited liability status.  Delaware adopted RULPA in 1982, and by 1985, 30 states had adopted RULPA to update their limited partnership statutes.[14]

RULPA's text gave more detail on the broadly accepted rule that limited partners could provide services to the partnership and remain protected as limited partners.  The model statute contained a safe harbor provision listing examples of numerous activities and services— far beyond passive investment—that limited partners could perform

---

[14]     *See* Joseph J. Bastile Jr., *The 1985 Delaware Revised Uniform Limited Partnership Act*, 41 Bus. Law. 571, 572 (1986).

without losing limited liability protection. These included significant business services such as: serving as an "employee of the limited partnership or of a general partner"; "consulting with and advising a general partner with respect to the business of the limited partnership"; "acting as surety for the limited partnership"; and voting on important partnership issues such as "dissolution and winding up of the limited partnership" or "a change in the nature of the business." RULPA § 303 (1976).[15]

In a comment to the model statute, the drafters explained that this Section "lists a number of activities in which a limited partner may engage without . . . acquir[ing] the liability of a general partner." RULPA § 303, Pref. Note (1976). Rather than restraining a limited partner to a passive investor role, RULPA does the opposite: it expressly allows a

---

[15] The common understanding in 1977 (and today) that a limited partner can perform services for a limited partnership without losing liability protections explains why Section 1402(a)(13) carves out from the exclusion "guaranteed payments . . . for services actually rendered" if "in the nature of remuneration for those services." If a limited partner was barred from performing services for a limited partnership and was required to be "passive," then Congress would not have legislated for different tax treatment of service-based income depending on the nature of the payment.

limited partner to perform services for the partnership without losing

limited liability status.[16]

### D. Treasury's 1994 Proposed Regulations Reaffirmed That Limited Partners Are Not Restricted to Passive Investor Roles.

Even though the Government now defends the Tax Court's

*Sirius* decision and *Soroban* on which it relies, Treasury and the IRS

previously interpreted Section 1402(a)(13) to encompass more than just

passive investors. For example, in 1994, Treasury and the IRS proposed

---

[16]     Under state law, a limited partner, in some circumstances, can be liable for the obligations of the limited partnership if it "participates in the control of the business." RULPA § 303 (1976). If that occurs, the limited partner loses limited liability protections only with respect to third parties that transact with the partnership while "reasonably believing" that the limited partner was a general partner. *Id.* This narrow carve-out from the scope of limited liability protection does not preclude a limited partner from providing business services to the partnership, or serving as an employee of the partnership or of the general partner, and it certainly does not require limited partners to remain only as "passive investors," as *Soroban* erroneously concluded. *See, e.g., id.; Frigidaire*, 562 P.2d at 246–47. Individuals who are limited partners can also serve in management roles in a general partner. This dual-capacity structure is rooted in state law, as *Frigidaire* reflects, and was also recognized by Congress when enacting Section 1402(a)(13). As Appellants have explained, Section 1402(a)(13) used the term "limited partner, as such" to distinguish between income received by an individual as a limited partner (which is subject to the exclusion) and income received by that individual in a general partner capacity (which is not subject to the exclusion). *See* Appellants' Br. at 22.

-16-

regulations under Section 1402(a)(13) intended to clarify how the limited partnership exception would apply to members of other types of entities, collectively referred to as limited liability companies ("LLCs"), that provide limited liability protection to members.[17]   The proposed regulations contemplated that an LLC member would be treated as a limited partner under Section 1402(a)(13), if, among other things, the "entity could have been formed as a limited partnership rather than an LLC *in the same jurisdiction*" and "the member could have qualified as a limited partner in that limited partnership *under applicable law*."[18] Contrary to *Soroban*'s holding, the proposed regulations point directly to

---

[17]    Self-Employment Tax Treatment of Members of Certain Limited Liability Companies, 59 Fed. Reg. 67,253 (Dec. 29, 1994).

[18]    *Id.* (emphasis added).  The preamble to the proposed regulations explained that the purpose of this requirement was to ensure the same "result for self-employment tax purposes" for LLCs and limited partnerships under Section 1402(a)(13). *Id.* at 67,254. Referencing state law, it noted that "some states prohibit the conduct of certain activities" of limited partnerships, and that LLCs should therefore be subject to the same state law requirements as limited partnerships. *Id.*

state limited partnership law, which does not restrict limited partners to passive investor roles.[19]

## CONCLUSION

For these reasons and those set forth in Petitioners-Appellants' brief, this Court should reverse the judgment of the Tax Court.

---

[19] Further confirming Section 1402(a)(13)'s reliance on state law definitions, in 1997, Treasury withdrew the 1994 proposed regulations and issued new proposed regulations seeking to reduce the administrative burden of applying a definition that "differ[s] depending upon *where the partnership [was] organized*." Definition of Limited Partner for Self-Employment Tax Purposes, 62 Fed. Reg. 1702, 1703 (Jan. 13, 1997) (emphasis added). In these new proposed regulations, Treasury attempted to introduce a uniform functional analysis test, which it explained departed from "*[s]tate law characterizations* of an individual as a 'limited partner' or otherwise." *Id.* (emphasis added). Congress responded by imposing a temporary moratorium on Treasury's ability to promulgate the proposed regulations. *See* Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 935, 111 Stat. 788, 882 (1997). A "Sense of the Senate" urged Treasury to withdraw the proposed regulations because "Congress, not the Department of the Treasury or the Internal Revenue Service, should determine the tax law governing self-employment income for limited partners," and because "the Senate [was] concerned that the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the Treasury Department . . . effectively chang[ing] the law administratively without congressional action." 143 Cong. Rec. S6694 (daily ed. June 27, 1997).

Dated:  August 19, 2024
New York, New York

Respectfully submitted,

Of Counsel:

Ryan P. McCormick
THE REAL ESTATE ROUNDTABLE, INC.
801 Pennsylvania Ave. N.W.
Suite 720
Washington, D.C. 20004
Tel:  (202) 639-8400

/s/ David M.J. Rein
David M.J. Rein
David C. Spitzer
Isaac J. Wheeler
Mark A. Popovsky
Zachary R. Ingber
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel:  (212) 558-4000

*Counsel for Amicus Curiae*
*The Real Estate Roundtable, Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that:

This brief complies with the length limitation of Federal Rule of Appellate Procedure 29(a)(5) and Fifth Circuit Rule 29.3 because this brief contains 3638 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Century Schoolbook 14-point font.

August 19, 2024                    /s/ David M.J. Rein
                                   David M.J. Rein

                                   *Counsel for Amicus Curiae*
                                   *The Real Estate Roundtable, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2024, I caused the foregoing Brief of Amicus Curiae The Real Estate Roundtable, Inc. to be filed electronically using the Court's CM/ECF system. I further certify that service will be accomplished electronically on all counsel of record, who are registered CM/ECF users.

August 19, 2024

/s/ David M.J. Rein
David M.J. Rein

*Counsel for Amicus Curiae*
*The Real Estate Roundtable, Inc.*