No. 24-60240

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Sirius Solutions, L.L.L.P.; Sirius Solutions GP, L.L.C.;
Tax Matters Partner,

*Petitioners – Appellants*

v.

Commissioner of Internal Revenue,

*Respondent – Appellee*

Appeal from the United States Tax Court
Case Nos. 11587-20; 30118-21

## REPLY BRIEF OF APPELLANTS

Mary A. McNulty
Lee S. Meyercord
Meghan McCaig
Richard B. Phillips, Jr.
Holland & Knight, L.L.P.
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 964-9500

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................1

Argument ...................................................................................................3

I.    The ordinary meaning of "limited partner" in section 1402(a)(13) at the time of enactment was a partner with limited liability in a state-law limited partnership. ...................................................................3

    A.    Dictionary definitions, including those cited by the IRS, confirm that "limited partner" means a partner with limited liability in a state-law limited partnership. ...........................................................3

    B.    The statutory context directly refutes the IRS's definition of "limited partner" as a passive investor. ...........................................4

    C.    Contemporaneous agency interpretations by the IRS and Social Security Administration confirm that "limited partner" means a state-law limited partner and not a passive investor................... 10

    D.    The historical definitions and "control" case law relied on by the IRS have no bearing on the ordinary meaning of the term "limited partner." ............................................................................... 14

II.    The legislative history is irrelevant, and even if considered, refutes the IRS's definition of "limited partner." ....................................... 18

III.    This Court should reject the IRS's attempt to reframe the issue as whether federal law or state law governs the interpretation of the Code. ...................................................................................................... 20

    A.    Sirius Solutions does not argue that labels control. ...................... 22

    B.    The IRS's position—not Sirius Solutions'—would lead to a lack of uniformity in the tax law. .......................................................... 26

Conclusion ............................................................................................... 28

Certificate Of Service .............................................................................. 30

Certificate Of Compliance ....................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Bittner v. United States*,
598 U.S. 85 (2023) ................................................................ 11

*Bostock v. Clayton Cnty., Ga.*,
590 U.S. 644 (2020) .............................................................. 18

*Brown v. United States*,
890 F.2d 1329 (5th Cir. 1989) ................................................ 26

*Burnet v. Harmel*,
287 US 103 (1932) ................................................................. 21

*Campbell v. Comm'r*,
943 F.2d 815 (8th Cir. 1991) .................................................. 17

*Comm'r v. Rankin*,
270 F.2d 160 (3d Cir. 1959) .............................................. 26, 27

*Crooks v. Harrelson*,
282 U.S. 55 (1930) ................................................................ 21

*Executive Hotel Assocs. v. Elm Hotel Corp.*,
245 N.Y.S.2d 929 (Civ. Ct. 1964), *aff'd*, 43 Misc. 2d 153, 250 N.Y.S.2d
351 (App. Term 1964) ........................................................... 15

*Gallardo By & Through Vassallo v. Marstiller*,
596 U.S. 420 (2022) ................................................................ 7

*Heiner v. Mellon*,
304 U.S. 271 (1938) ......................................................... 23, 24

*Laney v. Comm'r*,
674 F.2d 342 (5th Cir. 1982) .................................................. 15

*Lee v. Navarro Sav. Ass'n*,
597 F.2d 421 (5th Cir. 1979), *aff'd*, 446 U.S. 458 (1980) ....................... 16

*Legget v. Comm'r*,
329 F.2d 509 (2d Cir. 1964) ................................................... 27

*Lehman v. United States*,
448 F.2d 1318 (5th Cir. 1971) .................................................................... 24

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ............................................................................. 14

*Lyeth v. United States,*
305 U.S. 188 (1938) .................................................................................. 26

*Mem'l Hermann Accountable Care Org. v. Comm'r*,
No. 23-60608, 2024 WL 4586187 (5th Cir. Oct. 28, 2024) ..................... 18

*MoneyGram Int'l, Inc. v. Comm'r*,
999 F.3d 269 (5th Cir. 2021) ................................................................... 25

*Morgan v. Comm'r,*
309 U.S. 78 (1940) .................................................................................... 22

*National Federal of Independent Business v. Sebelius,*
567 U.S. 519 (2012) .................................................................................. 23

*PPL Corp. v. Comm'r,*
569 U.S. 329 (2013) .................................................................................. 23

*SEC v. Arcturus Corp.*,
928 F.3d 400 (5th Cir. 2019) ................................................................... 16

*Stafford v. United States,*
611 F.2d 990 (5th Cir. 1980) ................................................................... 17

*Steinhardt Group Inc. v. Citicorp*,
126 F.3d 144 (3d Cir. 1997) ..................................................................... 16

*Texas Truck Parts & Tire, Inc. v. United States*,
No. 23-20588, 2024 WL 4439825 (5th Cir. Oct. 8, 2024) ......................... 3

*Thomas v. Reeves*,
961 F.3d 800 (5th Cir. 2020) ................................................................... 18

*Union Bankers Ins. Co. v. United States*,
317 F.2d 598 (5th Cir. 1963) ................................................................... 21

*United States v. Cambridge Loan & Bldg. Co.*,
   278 U.S. 55 (1928) ...................................................................... 21

*Vitol Inc. v. United States*,
   30 F.4th 248 (5th Cir. 2022) ................................................... 3, 18

*Wilmette Park Dist. v. Campbell*,
   338 U.S. 411 (1949) .................................................................. 23

## Statutes

26 U.S.C. § 71(a) ........................................................................ 26

26 U.S.C. § 704 ........................................................................... 25

26 U.S.C. § 707(c) ......................................................................... 7

26 U.S.C. § 1402(a) ....................................................................... 9

26 U.S.C. § 1402(a)(10) ............................................................. 6, 7

26 U.S.C. § 1402(a)(13) ......................................................... *passim*

DEL. CODE. ANN. tit. 6, § 1701 ............................................. 24, 25

DEL. CODE. ANN. tit. 6, § 1702(a)(F) ........................................ 17

DEL. CODE. ANN. tit. 6, § 1704 .................................................. 17

DEL. CODE. ANN. tit. 6, § 1707(a)-(c) ........................................ 17

DEL. CODE. ANN. tit. 6, § 1712 .................................................. 20

Revised Uniform Limited Partnership Act of 1976 § 303 .................... 17, 27

Uniform Limited Partnership Act of 1916 § 12 ........................................... 20

## Regulations

20 C.F.R. § 404.1080(b)(3) ................................................... 11, 12

26 C.F.R. § 1.1402(a)-2(d), (g) ................................................... 9

## Other Authorities

89 Fed. Reg. 55666 (July 5, 2024)................................................................... 13

ANTONIN SCALIA & BRYAN A. GARNER,
  READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ........... 5, 15

Black's Law Dictionary (Rev. 4th ed. 1968)................................................... 4

Boris I. Bittker, *The Federal Income Tax and State Law*,
  32 Sw. L.J. 1075 (1979) ............................................................................ 21

H.R. REP. NO. 95-702 (1977)................................................................. 19, 20

Dean Allan W. Vestal & Thomas E. Rutledge, *The Uniform Limited
  Partnership Act (2001) Comes to Kentucky: An Owner*'s Manual,
  34 N. Ky. L. Rev. 410 (2007)................................................................... 27

# INTRODUCTION

This Court should reverse the Tax Court's decision that "limited partner" in 26 U.S.C. § 1402(a)(13) means "passive investor" because the ordinary meaning of the term at the time of enactment was a partner with limited liability in a state-law limited partnership. This definition is confirmed by dictionary definitions (including those cited by the Internal Revenue Service ("IRS")), the statutory context, contemporaneous IRS and Social Security Administration ("SSA") guidance, and Congress.

The IRS does not seriously defend the Tax Court's reasoning in concluding that "limited partner" means a passive investor. Instead, the IRS seeks to have this Court disregard the ordinary meaning of the statute based on irrelevant case law. But none of the cases cited by the IRS preclude a limited partner from providing services to the partnership or participating in its business. Instead, these cases all involve the extent to which a limited partner may "control" the partnership, which has no bearing on the ordinary meaning of the term "limited partner." The IRS also relies heavily on its perception of the legislative history to disregard the ordinary meaning of the statute, but the statutory language and legislative history directly refute the IRS's legislative-intent argument.

Faced with the plain language of the statute, language that would be rendered superfluous if the Court were to adopt the IRS's position, and the lack of authority supporting its position that limited partner means a passive investor, the IRS seeks to reframe the issue with several red herrings. This is not—as the IRS suggests—a question of whether state law can trump federal law. The parties agree that federal law governs the interpretation of federal statutes such as the Internal Revenue Code (the "Code"). Nor is this a question of "labels" or substance over form.

Instead, Sirius Solutions' position is that where, as here, Congress did not enact a specific definition of the commonly used term "limited partner," it intended for that term to have its ordinary meaning. The ordinary meaning of the term "limited partner" means a partner with limited liability in a state-law limited partnership. That limited liability is determined under applicable state law, and federal law then determines the tax consequences. Thus, Sirius Solutions does not contend that state law governs or that labels control. Sirius Solutions only asks this Court to give the term "limited partner" its ordinary meaning.

Finally, the ordinary meaning of the term "limited partner" would not lead to a lack of uniformity. All partners with limited liability in a state-law limited partnership would be treated the same. Further, due to the wide-spread

adoption of uniform laws both at the time of enactment and today, this is not

a real concern. Instead, it is the IRS's passive investor "spectrum" test that

has no predictable, objective standards and will lead to litigation and a lack of

uniformity in its application.

## ARGUMENT

I. **The ordinary meaning of "limited partner" in section 1402(a)(13) at the time of enactment was a partner with limited liability in a state-law limited partnership.**

    A. **Dictionary definitions, including those cited by the IRS, confirm that "limited partner" means a partner with limited liability in a state-law limited partnership.**

The parties agree that the ordinary meaning of the term "limited

partner" at the time of enactment controls. (Resp. Br. at 36.) This Court has

repeatedly confirmed that the ordinary meaning of a term at the time of

enactment is "often derived from dictionaries." *Vitol Inc. v. United States*, 30

F.4th 248, 253–54 (5th Cir. 2022); *see also Texas Truck Parts & Tire, Inc. v.

United States*, No. 23-20588, 2024 WL 4439825, at *3, 7 (5th Cir. Oct. 8,

2024) (consulting dictionary definitions at the time of enactment). Dictionary

definitions at the time of section 1402(a)(13)'s enactment defined "limited

partner" as a partner with limited liability in a limited partnership. (Br. at 11–

12.) Because a limited partnership is formed under state law and state law

3

confers limited liability, a limited partner is necessarily a state-law limited partner.

The IRS does not dispute the relevance of dictionary definitions, and all definitions cited by the IRS confirm this ordinary meaning of the term limited partner at the time of enactment. (Resp. Br. at 40, 44.) For example, in the definition of "limited partnership," Black's Law Dictionary describes limited partners as those "who are not liable for the debts of the partnership beyond the fund so contributed." *Limited Partnership*, Black's Law Dictionary, at 1277 (Rev. 4th ed. 1968); (Resp. Br. at 40, 44.) The IRS argues that Black's express statement that general partners conduct the business necessarily implied that limited partners do not. (Resp. Br. at 40, 44.). But the definition did not preclude a limited partner from participating in the business or otherwise define a limited partner as "passive," as the IRS argues here. Instead, it confirms that the key attribute of a "limited partner" is limited liability.

### B. The statutory context directly refutes the IRS's definition of "limited partner" as a passive investor.

While the IRS argues that the "statutory context" supports its position, it never quotes from or discusses the statutory language but merely repackages its legislative history argument that "limited partner" means a passive investor. (Resp. Br. at 48–51.) Notably absent is a defense of the Tax Court's

4

interpretation of the phrase "as such" to mean a passive investor. The actual statutory context confirms that "limited partner" has its ordinary meaning as a partner with limited liability in a state-law limited partnership.

Section 1402(a)(13) is clear as to when the performance of services prevents a payment from qualifying for the limited partner exception. Section 1402(a)(13) carves out guaranteed payments "for services actually rendered to or on behalf of the partnership to the extent those payments are established to be in the nature of remuneration for those services." If "limited partner" means a passive investor, as the IRS urges, the guaranteed payment language would be unnecessary because payments for services would not qualify for the exception in the first place. Thus, the IRS's interpretation violates a fundamental cannon of statutory interpretation that "every word and every provision is to be given effect." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (hereafter "READING LAW"), 174 (West Group, 1st ed. 2012).

The amicus brief supporting the IRS argues that the reference to guaranteed payments in section 1402(a)(13) is not surplusage because it clarifies that guaranteed payments would not be treated as the partner's distributive share and would still be subject to self-employment tax. (NYU Br. at 11, fn. 2.) But that's exactly Sirius Solutions' point: Congress chose to

make *only* guaranteed payments subject to self-employment taxes and otherwise excluded a limited partner's distributive share, regardless of whether the limited partner provides services.

To avoid rendering the guaranteed payment carve-out meaningless, the IRS advances a "spectrum" argument that finds no support in the statutory language. The IRS argues that section 1402(a)(13) operates on a "spectrum" and that individuals may perform "*some services* for the partnership, but not so much so as to be functionally self-employed." (Resp. Br. at 57.) But the statute says nothing about a "spectrum" or when a limited partner is or is not "functionally self-employed." Nor does it quantify the amount of services that a limited partner may provide. Thus, the IRS's attempt to give meaning to the guaranteed payment carve-out distorts the statute beyond recognition.

If Congress intended the limited partner exception to apply on a "spectrum" based on the level of services provided, it could have defined the exception expressly by reference to services. Congress did exactly that with the exception to self-employment taxes for retired partners, which it applied only to a "partner [who] rendered *no services* with respect to any trade or business carried on by such partnership." 26 U.S.C. § 1402(a)(10)(A) (1968) (emphasis added). This exception is in the same Code provision as the limited

partner exception, yet Congress chose not to define the exception in section 1402(a)(13) by reference to services, except for guaranteed payments.

The IRS attempts to escape section 1402(a)(10) by arguing that no inference can be drawn from the absence of "no services" in section 1402(a)(13) because it was not enacted in the same "Act" as section 1402(a)(10). (Resp. Br. at 54.) But the Supreme Court has found that the negative inference is "strengthened" when the statute is enacted afterwards and "Congress did not use the existing language." *See, e.g., Gallardo By & Through Vassallo v. Marstiller*, 596 U.S. 420, 422 (2022) (referring to two statutes enacted about a decade apart). In addition, the negative inference can be drawn from section 1402(a)(13) itself: Congress used "services" for the guaranteed payment carve-out but not for the limited partner exception.

The IRS goes on to argue that section 1402(a)(10) "addressed a wholly different issue," but the point is not that the exceptions go to the same issue. (Resp. Br. at 54.) The point is that Congress could have easily used the language it used in section 1402(10) had it intended the "limited partner" exception in section 1402(a)(13) to turn on whether a limited partner provides services. Congress instead chose to allow a limited partner to provide services and made payments for those services subject to self-employment taxes *only* if they qualified as guaranteed payments under section 707(c).

Apparently ignoring the IRS's argument about when Congress's choice of language in other statutes may be considered, the amicus brief supporting the IRS cites other statutes that it contends support the IRS's position. (NYU Br. at 13–14.) The two Code provisions cited by the amicus—section 1256(e)(3)(C)(i) and section 469(h)(2)—confirm that a limited partner may provide services.[1] Congress expressly states that a limited partner who provides services is not treated as a limited partner in certain circumstances. In section 1256(e)(3)(C)(i), Congress used the term "limited partner" in its definition of a "syndicate" but then expressly excluded from "limited partner" status anyone "who actively participates… in the management" of the partnership. This exclusion would have been unnecessary if "limited partner" meant a passive investor.

Likewise, in section 469(h)(2), Congress deemed a limited partner to be passive (*i.e.*, not to materially participate) except as provided in the regulations. If "limited partner" meant a "passive investor," this provision again would have been unnecessary. Thus, these provisions confirm that the rendering of "services" is not taken into account under the ordinary meaning

---

[1] The amicus brief also cites sections 448 and 1258 to show that the term "limited partner" is a proxy for passive investor. (NYU Br. at 13.) But section 448 does not even use the term "limited partner," and section 1258 discusses a limited partner's "net investment" in a limited partnership, not the services provided to the limited partnership.

of the term limited partner. Congress recognizes that limited partners may provide services and remain limited partners and therefore specifies when the rendering of services is relevant to the application of a particular statutory provision.

Thus, a limited partner "is not the same" as an "inactive partner," (RS 01802.304 Partners, Program Operating Manual System, Social Security Administration (SSA - POMS: RS 01802.304 - Partners - 09/15/1997)), and the amicus brief supporting the IRS is wrong that the two terms are interchangeable (NYU Br. at 8.) Before Congress enacted section 1402(a)(13), limited partners and inactive partners paid self-employment taxes if the partnership carried on a trade or business. 26 U.S.C. § 1402(a); 26 C.F.R. § 1.1402(a)-2(d), (g). After Congress enacted section 1402(a)(13), an inactive partner continued to pay self-employment taxes unless that partner was also a limited partner. The IRS revised Publication 533 to make clear that inactive partners continued to include their distributive share of partnership income in net earnings from self-employment but limited partners would now include only guaranteed payments. (*See* MFA Br. at 15–16.)

**C.** **Contemporaneous agency interpretations by the IRS and Social Security Administration confirm that "limited partner" means a state-law limited partner and not a passive investor.**

From the first year in which the limited partner exception applied until more than forty years later, tax return instructions defined a "limited partner" as a partner with limited liability in a state-law limited partnership. (Br. at 13–16.) For example, the tax return instructions for the years at issue defined a "limited partner" as "a partner in a partnership formed under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." (Br. at 13–14.)

Contrary to the IRS's suggestion, nothing in the tax return instructions suggests that the definition of "limited partner" for purposes of section 1402(a)(13) is anything other than a state-law limited partner with limited liability. The IRS now attempts to reconcile its current position with the instructions by arguing that its "passive investor" definition underlies limited liability because "[a]n individual having pervasive involvement in the conduct and management of the business potentially would not have limited liability." (Resp. Br. at 58.) This is flawed for at least two reasons.

First, there is no suggestion in the instructions that limited partners should consider where they fall on the IRS's proposed "spectrum" (i.e., their

level of conduct and management of the business) to determine whether they are limited partners for purposes of section 1402(a)(13). It would be impossible for a taxpayer to glean the IRS's test from the IRS's tax return instructions.

Second, the IRS's argument conflates two separate concepts: control and active participation in the partnership. A limited partner who exercises *control* over the limited partnership may lose limited liability on a transactional basis, as discussed more in Section D. below, but a limited partner does not lose limited liability by actively participating in the partnership.

The IRS's arguments about the tax return instructions should be rejected. For decades, the IRS has defined a "limited partner" as a partner with limited liability in a state-law limited partnership. When "the government has repeatedly issued guidance to the public at odds with the interpretation it now asks [the Court] to adopt," that "counts as one more reason yet to question whether [the government's] current position represents the best view of the law." *Bittner v. United States*, 598 U.S. 85, 97 (2023).

The IRS's attempts to distinguish the contemporaneous Social Security Administration's regulation fare no better. The applicable regulation provides: "You are a limited partner if your financial liability for the

obligations of the partnership is limited to the amount of your financial investment in the partnership." 20 C.F.R. § 404.1080(b)(3). The next sentence (on which the IRS relies) provides: "Generally, you will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership." *Id.* "[Y]ou will not have to" does not mean "you are prohibited from" performing services and implies that a limited partner may perform services. *See id.* Thus, the SSA regulations are, on their face, consistent with Sirius Solutions' position and inconsistent with the IRS's definition of "limited partners" as passive investors.

Perhaps recognizing this fact and the potential whipsaw for taxpayers if the IRS and SSA apply different definitions of a "limited partner," the IRS goes on to insist that it is "unaware of any case where the SSA denied Social Security benefits on the ground that a partner who paid self-employment taxes is nonetheless a limited partner not entitled to benefits." (Resp. Br. at 62.) But of course that is unsurprising. For over forty years, the IRS interpreted "limited partner" consistently with the SSA regulation defining a limited partner as a partner with limited liability. Only recently, as part of its audit campaign, has the IRS disavowed the plain language of the statute and its prior guidance and attempted to subject state-law limited partners to self-employment tax. (MFA Br. at 29–31.)

The IRS points to a "Partnership Questionnaire" as evidence that the SSA, in practice, applies a definition similar to the Tax Court's passive investor test. (Resp. Br. at 62.) But nothing in that form or SSA guidance indicates that the form is used to determine whether a partner is a limited partner for purposes of the limited partner exception. The term "limited partner" does not even appear on the form. Instead, the form is used to determine whether there is a valid partnership and "the accuracy of reported partnership earnings; the veracity of a retirement; and lag earnings." Agency Information Collection Activities: Proposed Request and Comment Request, 89 Fed. Reg. 55666 (July 5, 2024); RS 01802.330, How to Develop Partnership Questions, Program Operating Manual System, Social Security Administration (https://secure.ssa.gov/poms.nsf/lnx/0301802330). The questions about what services each partner performs in connection with the business, the time devoted to the business, and who makes various decisions are relevant to determining whether there is a valid partnership and whether a partner has retired, not whether a partner is a limited partner.

While the IRS seeks to distance itself from its prior guidance and mischaracterizes the Partnership Questionnaire to side-step the SSA regulation, the IRS instructions and SSA regulations are particularly informative here. They represent interpretations "issued contemporaneously

with the statute at issue," which have "remained consistent over time" and therefore are "especially useful" in determining the meaning of "limited partner" in section 1402(a)(13). *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024).

Moreover, the understanding of "limited partner" in section 1402(a)(13) by Congress, the Treasury Department, the IRS and the courts has remained constant for over forty years. The IRS does not have the authority to change that definition retroactively through an audit campaign and Tax Court litigation. (MFA Br. at 5–6, 29–33.)

### D. The historical definitions and "control" case law relied on by the IRS have no bearing on the ordinary meaning of the term "limited partner."

The IRS agrees that "limited partner" should have its ordinary meaning but rejects Sirius Solutions' ordinary meaning interpretation of limited partner as "hyperliteral" because it is not "fair."[2] (Resp. Br. at 37.) According to the IRS, Sirius Solutions' interpretation fails to take into account a "key aspect" of limited partnership, which is that limited partners "were passive investors who did not take an active role in the management or operation of the

---

[2] Use of the word "fair" is a curious choice, as it is hardly "fair" for the IRS, after over forty years of guidance interpreting "limited partner" to mean a state-law limited partner, to initiate an audit campaign to attempt to change the definition of "limited partner" in litigation after it was unable to do so in regulations.

partnership's business." (Resp. Br. at 37.) But to support this interpretation, the IRS relies on historical definitions of limited partnerships centuries before section 1402(a)(13) was enacted and irrelevant case law. None of this authority supports the IRS's argument that the ordinary meaning of the term limited partners in 1977 meant a "passive investor."

First, the historical definitions from the Middle Ages and 19th Century are irrelevant to the meaning at the time of enactment. "[W]ords must be given the meaning they had when the text was adopted," not the meaning they may have had centuries earlier on a different continent. READING LAW at 78.

Second, the IRS attempts a sleight-of-hand to confuse "control" with "active participation." (Resp. Br. at 41-48.) None of the cases cited by the IRS preclude a limited partner from participating in the business. At most, these cases suggest that a limited partner may not "control" the partnership. (Resp. Br. at 41–48.) *See, e.g.*, *Executive Hotel Assocs. v. Elm Hotel Corp*., 245 N.Y.S.2d 929, 933 (Civ. Ct. 1964) (observing that a limited partner may lose limited liability if he "takes part in the control of the business"), *aff'd*, 43 Misc. 2d 153, 250 N.Y.S.2d 351 (App. Term 1964); *Laney v. Comm'r*, 674 F.2d 342, 348 (5th Cir. 1982) (referring to a Texas Supreme Court case discussing the control test in dicta, which the Fifth Circuit described as "inapposite"). Some of the cases do not even involve a limited partnership.

*See, e.g.*, *Lee v. Navarro Sav. Ass'n*, 597 F.2d 421, 427 n.6 (5th Cir. 1979) (trust), *aff'd*, 446 U.S. 458 (1980); *SEC v. Arcturus Corp.*, 928 F.3d 400, 410 (5th Cir. 2019) (LLC). Still others involve securities law, which employs a different and irrelevant test to determine if a financial instrument, including a limited partnership interest, constitutes a security. *Arcturus Corp.*, 928 F.3d at 410; *see also Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 155 (3d Cir. 1997) (holding that the test for control under Delaware limited partnership law "does not necessarily equate to the threshold for finding a passive investor under federal securities laws").

Nothing in these cases prevents a limited partner from actively participating in the business, and therefore they do not support the IRS's argument that "limited partner" means a "passive investor." At most, they indicate that "control" may jeopardize a limited partner's limited liability under state law in certain circumstances. But that is not an issue here. The IRS never contends that the limited partners lost their limited liability under the "control" test. Instead, the IRS's real complaint is that the limited partners "worked full time" on Sirius Solutions' business and held titles such as Chief Executive Officer, oversaw service lines and teams delivering consulting services, and signed documents. (Resp. Br. at 7–8.) But at the time of enactment, this was expressly allowed under Delaware law. In 1977,

Delaware included a wide variety of non-passive activities in which a limited partner could engage without losing liability protection and expressly allowed limited partners to provide services to the partnership. DEL. CODE. ANN. tit. 6, §§ 1702(a)(F), 1704, 1707(a)–(c) (1977). (*See* RER Br. at 1–12.)

The Revised Uniform Limited Partnership Act ("RULPA"), promulgated in 1976 and discussed by the IRS, also made clear that providing services to a partnership does not disqualify a limited partner's limited liability status and confirmed the existing case law that a limited partner may serve as an employee of the limited partnership, consult with and advise the general partner on the business, and vote on important partnership issues. RULPA § 303 (1976). (RER Br. at 13–16.)

Likewise, case law prior to the enactment of section 1402(a)(13) recognized that limited partners may actively participate in the business. (*See* RER Br. at 10–11.) Similarly, this Court's decision in *Stafford v. United States* addressed a limited partner who provided key services to the partnership in 1969—almost a decade before the enactment of section 1402(a)(13). 611 F.2d 990, 994 (5th Cir. 1980); *see also Campbell v. Comm'r*, 943 F.2d 815, 816 (8th Cir. 1991) (limited partners performed services in a limited partnership in 1979). Thus, the law was well-established in 1977 that a limited partner could participate in the partnership's business,

and the ordinary meaning of the term "limited partner" in 1977 is not a "passive investor."

## II. The legislative history is irrelevant, and even if considered, refutes the IRS's definition of "limited partner."

Given that the IRS has no statutory construction, contemporaneous guidance, case law, or dictionary definitions to support its position, it ultimately relies only on legislative history to disregard the plain meaning of the term "limited partner." (Resp. Br. at 49–53.) But this Court has been clear that it "need not consider legislative history or abstract congressional purpose" because "[t]he truest indication of what Congress intended is what Congress enacted.'" *Vitol Inc. v. United States*, 30 F.4th 248, 253 (5th Cir. 2022) (*quoting Thomas v. Reeves*, 961 F.3d 800, 826 (5th Cir. 2020) (Willett, J., concurring)). Thus, "history or intent cannot override the unambiguous text." *Mem'l Hermann Accountable Care Org. v. Comm'r*, No. 23-60608, 2024 WL 4586187, at *3 (5th Cir. Oct. 28, 2024). Taxpayers "are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 674 (2020). As written, Congress enacted a clear, administrable, bright-line exception to self-employment tax for limited partners that carves out only guaranteed payments for services.

Even if considered, the legislative history also does not support the IRS's position that "limited partner" means passive investor. The IRS cites the legislative history explaining that Congress enacted the exception to exclude "earnings which are basically of an investment nature." (Resp. Br. at 52) (citing H.R. Rep. No. 95-702, pt. I, at 11 (1977)). "Investment" is not in the statutory language, and the statutory language directly refutes the IRS's argument that "limited partner" means a passive investor. The inclusion of the phrase "as such" recognizes that a partner may be both a general partner and a limited partner and clarifies that the exception applies only to the partner's distributive share received as a limited partner. If the IRS were correct that a limited partner cannot actively participate in the partnership, a dual-status partner would not qualify for the exception because, as the IRS recognizes, general partners typically control the partnership and actively participate in its business. (Resp. Br. at 44.) However, the statutory language makes clear that the exception still applies to the distributive share received as a limited partner.

The legislative history explicitly confirms this reading by recognizing that a partner could serve as both a general partner and a limited partner under state law at the time and then explaining that the distributive share received as a limited partner would be exempt from self-employment taxes whereas the

distributive share received as a general partner would not.  H.R. REP. NO. 95-702, pt. I, at 40 (1977); *see* DEL. CODE. ANN. tit. 6, § 1712 (1977); Uniform Limited Partnership Act of 1916 § 12 (a "person may be a general partner and a limited partner in the same partnership at the same time.").

Further, the limited partner exception was enacted to conform to the exception from social security benefits, which Congress enacted to stop what it perceived as abusive access to social security benefits.  (Br. at 28.)  It is therefore unsurprising that Congress would broadly draft that exception to exclude limited partners from Social Security benefits.  (MFA Br. at 8–12.)

**III.    This Court should reject the IRS's attempt to reframe the issue as whether federal law or state law governs the interpretation of the Code.**

The IRS attempts to reframe the issue as whether federal law or Delaware state partnership law controls the interpretation of section 1402(a)(13) and asserts that federal law governs federal tax statutes.  (Resp. Br. at 24.)  But that is not the issue in this case.  There is no dispute that federal law governs the interpretation of federal tax statutes.

Rather, Sirius Solutions' position is that where, as here, Congress did not enact a specific definition of the commonly used term "limited partner," it intended for that term to have its ordinary meaning.  (Br. at 10–21.)  The ordinary meaning of the term "limited partner" means a partner with limited

liability in a state-law limited partnership. That limited liability is determined under applicable state law. If a partner does not qualify as a partner with limited liability in a state-law limited partnership, then the section 1402(a)(13) exception is inapplicable.

As the Supreme Court has explained, "[t]he state law creates legal interests, but the federal statute determines when and how they should be taxed." *Burnet v. Harmel*, 287 US 103, 110 (1932). Thus, courts frequently look to state law to determine the legal interests and rights subject to federal tax law. *E.g.*, *Union Bankers Ins. Co. v. United States*, 317 F.2d 598, 603–04 (5th Cir. 1963) (Texas law determined whether corporation had right to acquire shares and therefore was subject to the stamp tax); *Crooks v. Harrelson*, 282 U.S. 55, 59 (1930) (state law applied to determine what is includible in the decedent's estate for federal estate tax purposes); *see also United States v. Cambridge Loan & Bldg. Co*., 278 U.S. 55, 58–60 (1928) (state law applied to determine whether a corporation is a building and loan association for an income tax exemption); *see generally,* Boris I. Bittker, *The Federal Income Tax and State Law*, 32 Sw. L.J. 1075, 1080 (1979) (analyzing the Code's broad reliance on state law doctrines to determine federal tax liability).

The Supreme Court's decision in *Morgan v. Commissioner* confirms Sirius Solutions' view of the correct analytical framework. 309 U.S. 78 (1940). In that case, the Code did not define the terms general and specific power of appointment. The Supreme Court looked to the ordinary meanings of the terms and noted that the distinction usually made is that in a general power of appointment, "the donee may appoint to anyone," whereas in a specific power of appointment, the "donee may appoint only amongst a restricted or designated class." *Id*. at 81. The Supreme Court then applied that ordinary meaning to the interest created under state law and reiterated that "state law controls in determining the nature of the legal interest which the taxpayer had in the property or income sought to be reached by the statute." *Id*. at 82. Thus, Sirius Solutions is not arguing that state law trumps or controls federal law, just that the ordinary meaning of the term "limited partner" looks to whether the partner had limited liability, which depends on state law.

### A.    Sirius Solutions does not argue that labels control.

Sirius Solutions does not argue that anyone labeled a "limited partner" qualifies for the exception. Sirius Solutions' argument is that Congress, in using the term "limited partner," chose to incorporate the ordinary meaning of the term. The partner must satisfy the ordinary meaning of the term by

being a partner with limited liability in a state-law limited partnership. State law determines whether a partner has limited liability.

The IRS attempts to rely on cases where a label conflicted with either the ordinary meaning of the term or the federal definition and the court declined to rely on the label. In *PPL Corp. v. Commissioner*, the U.K. imposed a one-time "windfall profits tax." 569 U.S. 329, 335–36 (2013). Under the Code, foreign income taxes were creditable against U.S. income taxes. The Treasury Regulations defined when a tax is considered an income tax under a multi-factor test, and that test did not look at the labels given to the tax under foreign law. The Supreme Court applied the federal definition of "income tax" in the Treasury Regulations to determine whether the windfall profits tax qualified as an "income tax." *Id.*

In *National Federal of Independent Business v. Sebelius*, the Supreme Court applied the ordinary meaning of the term "tax" to determine whether the shared responsibility payment was a "tax" within Congress's constitutional power to lay and collect taxes regardless of the fact that the payment was labeled a penalty in federal law. 567 U.S. 519, 562–64 (2012). *See also Wilmette Park Dist. v. Campbell*, 338 U.S. 411, 418–19 (1949) (finding that the state label of a "use tax" did not prevent an amount paid for admission to a beach from qualifying as a federal "admissions tax"); *Heiner*

*v. Mellon*, 304 U.S. 271, 278–79 (1938) (finding that a dissolved partnership did not become a trust for federal tax purposes, even though the surviving partners were labeled "liquidating trustees" under state law, because it clearly continued to carry on a business); *Lehman v. United States*, 448 F.2d 1318, 1319 (5th Cir. 1971) (applying the ordinary meaning of the term general power of appointment without regard to label).

But this is not a situation where the ordinary meaning or federal definition and the state law label diverge, as in the cases cited by the IRS. Here, there is no federal definition of the term "limited partner." Therefore, this Court must apply the ordinary meaning of the term at the time of enactment of a partner with limited liability in a state-law limited partnership. The IRS has stipulated that the Sirius Solutions is a Delaware limited partnership and that its partners were admitted as limited partners. (ROA.2537-38.) Under Delaware law, limited partners have limited liability. DEL. CODE. ANN. tit. 6, § 1701 (1977) ("The limited partner or partners as such shall not be bound by the obligations of the partnership."). Therefore, the limited partners qualify for the exception in section 1402(a)(13) because they satisfy the ordinary meaning of the term not because of any "label."

Therefore, the amicus supporting the IRS is wrong that a state-law label could allow a sole proprietor to qualify for the exception even if not a partner

in a partnership for federal income tax purposes.  (NYU Br. at 23.)  First, a sole proprietor would not qualify as a state-law limited partnership.  DEL. CODE. ANN. tit. 6, § 1701 (1977) (defining a limited partnership as a partnership "formed by two or more persons").  Second, any state-law label of a sole proprietor as a "limited partner" would not reflect the "common understanding" of the term.  *See MoneyGram Int'l, Inc. v. Comm'r*, 999 F.3d 269, 274 (5th Cir. 2021).  Third, the exception only applies to a limited partner's "distributive share," which requires that there be a partnership for federal income tax purposes.  26 U.S.C. § 704.

The IRS also cannot disregard the ordinary meaning of the statute with complaints of "objective economic realities" and "substance governs over form."  (Resp. Br. at 31 – 33.)  The ordinary meaning of the term "limited partner" tells us the necessary economic realities to qualify for the exemption, which is a state-law partner with limited liability. A state-law limited partner is a property interest with rights, obligations, and economic consequences. DEL. CODE. ANN. tit. 6, Chapter 17 (Limited Partnerships).  (ROA.941-49.) Therefore, the ordinary meaning of the term "limited partner" has economic reality and substance.  The IRS does not have license to disregard the plain language of the statute simply because it would prefer a different definition.

**B.     The IRS's position—not Sirius Solutions'—would lead to a lack of uniformity in the tax law.**

Under Sirius Solutions' position, all partners whose liability is limited under state law are treated uniformly, so there is uniformity in accordance with the ordinary meaning of the statute.   That is what *Lyeth v. United States* requires.  305 U.S. 188 (1938) (applying state law to determine who was an heir and then applying the ordinary meaning of the term "inheritance" to determine the federal tax consequences).[3]

Even if there was variation among state limited partnership laws, the federal income tax law—in deferring to State law to create the legal interests subject to tax—accepts this variation.   For example, section 71(a) (now repealed) allowed a husband to deduct alimony payments if he was "legally separated."   26 U.S.C. § 71(a) (repealed).   There is no federal definition of "legally separated," so the courts looked to state law.   In applying Pennsylvania law, the Third Circuit found that the taxpayer was not "legally separated," whereas the Second Circuit held on similar facts that a wife was "legally separated" under Florida law.   *Comm'r v. Rankin*, 270 F.2d 160, 164–

---

[3] While the amicus supporting the IRS also cites *Brown v. United States*, 890 F.2d 1329 (5th Cir. 1989), that case addressed judicial deference to the definition of the "period of administration" in the Treasury Regulations when that term was used but not defined in the statute.  Here, there is no definition of "limited partner" in the Treasury Regulations.

65 (3d Cir. 1959); *Legget v. Comm'r*, 329 F.2d 509, 511–12 (2d Cir. 1964). Thus, the federal income tax law accepts variation that results from differences in how states create or define legal rights or interests.

Here, however, the IRS's concern of state-law variation is overstated. The IRS cites no authority showing that state limited partner laws vary in any material way. (Resp. Br. at 34.) Given that most states had adopted the Uniform Limited Partnership Act when section 1402(a)(13) was enacted in 1977 and most states have adopted the Revised Uniform Limited Partnership Act today, the IRS's concern is purely theoretical. Dean Allan W. Vestal & Thomas E. Rutledge, *The Uniform Limited Partnership Act (2001) Comes to Kentucky: An Owner's Manual*, 34 N. Ky. L. Rev. 410, 414 n.14 (2007).

Instead, it is the IRS's test that would lead to an "unworkable patchwork scheme." The IRS provides no predictable, objective standard to apply its proposed "spectrum" passive investor test. An undefined facts-and-circumstances test will lead to litigation and a lack of uniformity in its application. Thus, the IRS's test, not the taxpayer's, will lead to a lack of uniformity. By contrast, Sirius Solutions' state-law limited partner test is easy to administer and will result in uniformity.

## CONCLUSION

This is not a question of whether state law governs federal law or whether "labels" control. The issue in this case is the ordinary meaning of the term "limited partner" at the time of enactment. Dictionary definitions, the statutory context, and contemporaneous and long-held guidance from the IRS and Social Security Administration all confirm that the ordinary meaning of the term "limited partner" is a partner with limited liability in a state-law limited partnership. The "control" case law and legislative history are irrelevant, do not support the IRS's position that a limited partner means a passive investor, and have no bearing on the ordinary meaning of the term "limited partner." This Court should reverse the Tax Court and hold that "limited partner" in section 1402(a)(13) has its ordinary meaning of a partner with limited liability in a state-law limited partnership.

Dated: November 1, 2024

Respectfully submitted,

HOLLAND & KNIGHT LLP

By:  */s/ Meghan McCaig*
     Mary A. McNulty
     Lee S. Meyercord
     Meghan McCaig
     Richard B. Phillips, Jr.

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201

**Counsel for Appellants**

## CERTIFICATE OF SERVICE

I certify that on November 1, 2024, a true and correct copy of the foregoing was served on all parties and all counsel of record via the Court's CM/ECF system, and all parties and counsel have consented to service by this means.

_/s/ Meghan McCaig_
Meghan McCaig

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1:  this document contains 6,066 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point, Times New Roman font.

*/s/ Meghan McCaig*
Meghan McCaig