**No. 24-60240**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

K Alain, L.L.L.P.;
K Alain GP, L.L.C., Tax Matters Partner,

*Petitioners-Appellants*

v.

Commissioner of Internal Revenue,

*Respondent-Appellee*

---

APPEAL FROM THE UNITED STATES TAX COURT
Case Nos. 11587-20, 30118-21

---

**APPELLANTS' RESPONSE**
**TO APPELLEE'S PETITION FOR REHEARING EN BANC**

---

Mary A. McNulty
Lee S. Meyercord
Richard B. Phillips, Jr.
Holland & Knight, L.L.P.
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 964-9500

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................3

ARGUMENT ..............................................................................................4

I. The Panel Correctly Interpreted the Statutory Text, and the Commissioner's Arguments Provide No Basis for En Banc Rehearing. ..........................................................................4

A. The panel correctly applied the ordinary meaning of "limited partner." ..........................................................................5

B. Contemporaneous and longstanding agency interpretations confirm the panel's holding. .................................6

C. The "as such" language does not support the Commissioner's position. ..........................................................7

D. The Commissioner's "guaranteed payment" argument undermines his position. ...........................................................8

E. The panel correctly concluded that the history of limited partnership law does not change the ordinary meaning of "limited partner." ..........................................................................8

F. The panel correctly concluded that the legislative history does not change the ordinary meaning of "limited partner." ..................................................................................9

II. The Panel's Analytical Approach Follows Supreme Court Precedent and Does Not Improperly Incorporate State Law or Depend on State Law "Labels." ........................................10

III. The Commissioner's Unsupported Policy Arguments Do Not Warrant En Banc Rehearing. ..............................................................11

CONCLUSION ..........................................................................................12

CERTIFICATE OF SERVICE ...................................................................14

CERTIFICATE OF COMPLIANCE ..........................................................15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Belt v. EmCare, Inc.*,
444 F.3d 403 (5th Cir. 2006) .......... 5

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 7

*Burnet v. Harmel*,
287 U.S. 103 (1932) .......... 11

*Deanda v. Becerra*,
96 F.4th 750 (5th Cir. 2024) .......... 10

*Denham Cap. Mgmt. LP v. Comm'r*,
T.C.M. (RIA) 2024-114, *appeal docketed*, No. 25-1349 (1st Cir. Apr. 11, 2025) .......... 4

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) .......... 10

*Gonzalez v. S. Pac. Transp. Co.*,
773 F.2d 637 (5th Cir. 1985) .......... 2

*Helvering v. William Flaccus Oak Leather Co.*,
313 U.S. 247 (1941) .......... 5

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 7

*Miller v. Tex. Tech Univ. Health Scis. Ctr.*,
421 F.3d 342 (5th Cir. 2005) .......... 11

*Morgan v. Comm'r*,
309 U.S. 78 (1940) .......... 11

*Soroban Cap. Partners LP v. Comm'r*,
161 T.C. 310 (2023) .......... 4

**Page**

*Soroban Cap. Partners LP v. Comm'r*,
T.C.M. (RIA) 2025-052, *appeal docketed*, No. 25-2079 (2d Cir. Aug. 29, 2025) ....................4

*United States v. Craft*,
535 U.S. 274 (2002)....................10

*United States v. Nixon*,
827 F.2d 1019 (5th Cir. 1987) ....................2

**Statutes**

26 U.S.C. § 1401 ....................12

26 U.S.C. § 1402(a)(10)....................8

26 U.S.C. § 1402(a)(13)....................*passim*

**Regulations**

20 C.F.R. § 404.1080(b)(3)....................6

**Other Authorities**

Fed. R. App. P. 40 ....................1

## INTRODUCTION

The Commissioner of Internal Revenue cannot show any need or basis for en banc rehearing of the panel's opinion. In an opinion written by Judge Oldham and published at 165 F.4th 374, the panel reversed the Tax Court and held that the ordinary meaning of the term "limited partner" in 26 U.S.C. § 1402(a)(13) is "a partner in a limited partnership that has limited liability." (Op.[1] at 5.) The panel's decision does not conflict with any decision of the United States Supreme Court, this Court, or another United States Court of Appeals or with state law precedent. Thus, the full Court's consideration is not necessary to secure or maintain uniformity of this Court's decisions. The Commissioner does not even attempt to invoke this portion of Fed. R. App. P. 40 as a basis for en banc review.

The Commissioner instead asserts that this case involves a question of "exceptional importance" that warrants the en banc Court's review. But the Petition does not demonstrate that this case involves a question of exceptional importance or even that the panel's decision is incorrect. The panel did exactly what Supreme Court precedent requires: it interpreted the plain text of section[2] 1402(a)(13) by determining the ordinary meaning of "limited partner" at the time of enactment. The panel did not improperly incorporate state law or depend on state-law labels. It

---

[1] "Op." refers to the panel opinion. "Petition" or "Pet." refers to the Commissioner's petition for rehearing en banc.

[2] Section references are to the Internal Revenue Code of 1986, as in effect for the tax periods at issue.

confirmed the ordinary meaning of "limited partner" by contemporaneous and consistent interpretations by the Internal Revenue Service ("IRS") and Social Security Administration ("SSA"). For over 40 years, the IRS itself defined "limited partner" just as the panel did.

The Commissioner's attack on the panel's opinion merely recycles arguments that the panel properly rejected. The Petition fails to rebut the panel's analysis. More importantly, the Petition's approach reveals its fundamental problem. The Commissioner's complaints are not about the legal standards the panel applied; they are about *how* it applied those standards and the results the panel reached. Those complaints are not worthy of en banc review. *See United States v. Nixon*, 827 F.2d 1019, 1023 (5th Cir. 1987) ("[E]n banc consideration is limited to cases involving 'a precedent-setting error of exceptional public importance or an opinion which directly conflicts with prior Supreme Court [or] Fifth Circuit precedent.'" (quoting *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 641 (5th Cir. 1985))).

The Petition also makes novel and unsupported allegations that the panel's decision will have deleterious funding consequences for Social Security and Medicare. But these unsupported policy arguments do not warrant en banc rehearing, either. The proper forum for the Commissioner to advance these arguments is Congress, not this Court. If the Commissioner can convince Congress that the panel's opinion could harm Social Security and Medicare funding, Congress

can amend the statute. Congress's choice not to do so since the statute's enactment in 1977, and the IRS's choice not to revise its own instructions defining limited partner based on limited liability from 1978 until 2022, undermine any claim that this case involves any question of exceptional importance. Because the Commissioner has not satisfied the extraordinary threshold required for en banc review of the panel's well-reasoned decision, the Petition should be denied.

## BACKGROUND

This case arose from the IRS's assertion that the limited partners of Sirius Solutions, L.L.L.P.,[3] a Delaware limited liability limited partnership operating a business-consulting firm, were not "limited partners" within the meaning of section 1402(a)(13) and that their distributive shares of partnership income should therefore be subject to self-employment tax. On its partnership returns for 2014, 2015, and 2016, Sirius reported zero net earnings from self-employment, consistent with the IRS's own instructions defining "limited partner" as a partner with limited liability in a state-law limited partnership. The IRS audited those returns and adjusted Sirius's net earnings from self-employment, a position the Tax Court upheld under

[3] On April 3, 2026, the Court granted Appellants' Motion to Amend Caption to reflect the name change of Appellant Sirius Solutions, L.L.L.P. to K Alain, L.L.L.P. and of Appellant Sirius Solutions GP, L.L.C. to K Alain GP, L.L.C. For convenience, this Response continues to refer to Sirius.

its decision in *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310 (2023).[4] (Op. at 3-4.)

On appeal, the panel reversed, holding that "a 'limited partner' is a partner in a limited partnership that has limited liability," based on the ordinary meaning of the statutory term at the time of enactment, as confirmed by contemporaneous and longstanding agency interpretations from both the IRS and the SSA. (Op. at 5.)

## ARGUMENT

### I. The Panel Correctly Interpreted the Statutory Text, and the Commissioner's Arguments Provide No Basis for En Banc Rehearing.

The Commissioner first contends that the panel's decision "contravenes the statute's text and the strong weight of legal authority" because, in the Commissioner's view, "the meaning of a 'limited partner' in 1977 turned on lack of significant management and control." (Pet. at 9.) This contention merely repackages the same arguments the panel carefully considered and rejected, and it provides no basis for the extraordinary remedy of en banc rehearing.

---

[4] *Soroban* is on appeal to the Second Circuit, and oral argument will be heard on June 25, 2026. *Soroban Cap. Partners LP v. Comm'r*, T.C.M. (RIA) 2025-052 (later proceeding applying *Soroban*'s "passive-investor" test), *appeal docketed*, No. 25-2079 (2d Cir. Aug. 29, 2025). *Denham Capital Management LP v. Commissioner*, T.C.M. (RIA) 2024-114, *appeal docketed*, No. 25-1349 (1st Cir. Apr. 11, 2025), also presents the same issue, and that case has been argued before the First Circuit.

### A. The panel correctly applied the ordinary meaning of "limited partner."

The panel correctly began with the statutory text, which must be given its ordinary meaning at the time of enactment. (Op. at 5 (citing *Helvering v. William Flaccus Oak Leather Co.*, 313 U.S. 247, 249 (1941)).) To determine that meaning, the panel consulted contemporaneous dictionaries, which it properly viewed as a "principal source of ordinary meaning." (*Id.* (quoting *Belt v. EmCare, Inc.*, 444 F.3d 403, 412 (5th Cir. 2006)).) Based on those dictionary definitions, the panel concluded that "[e]ach contemporaneous dictionary has one and only one characteristic in common: limited liability. The touchstone of a 'limited partner' in 1977 was limited liability." (*Id.* at 7.)

The Commissioner contends that the panel "selectively cited dictionaries" while ignoring broader definitions (Pet. at 14-15)—a strange allegation given that the Petition itself cites only Black's Law Dictionary and an 1888 dictionary. (*Id.* at 9-10, 15.) But the panel addressed this criticism, also made by the dissent, directly. While "some dictionaries had secondary definitions of 'limited partner' that focused on the type of work a partner did," the "primary focus of those definitions" was "limited liability." (Op. at 23.) The panel correctly concluded that alternative definitions suggesting "a lack of participation in partnership affairs are in the minority, and thus they do not upset the common understanding of the term 'limited partner' at the time of the statute's enactment." (*Id*. at 7 n.2.) The Commissioner's

disagreement with how the panel weighed primary and secondary definitions in multiple dictionaries provides no grounds for en banc review.

### B. Contemporaneous and longstanding agency interpretations confirm the panel's holding.

Contemporaneous and consistent interpretations from two agencies reinforce the panel's careful textual analysis. As the panel found, starting in 1978, the IRS defined "Limited Partner" in its partnership tax return instructions as "one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." (Op. at 8.) This definition "remained constant for well over the next 40 years," including through the tax years at issue in this case. (*Id.*) The IRS's instructions never "even hinted" that the term "limited partner" meant a passive investor. (*Id.* at 9.)

The panel also considered the SSA's final rule promulgated in 1980—just two years after the limited-partner exception took effect—defining a "limited partner" for purposes of the parallel SSA provision as one whose "financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership." (Op. at 11 (citing 20 C.F.R. § 404.1080(b)(3)).) As the panel correctly noted, the SSA rule's additional observation that "[g]enerally, you will not *have to* perform services" does not mean "that such partners cannot or generally do not perform services for the partnership." (*Id.* at 11-12.)

The panel deemed these agency interpretations, which were issued contemporaneously with enactment of section 1402(a)(13) and remained consistent over time, as "especially useful in determining the statute's meaning." (Op. at 7 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)).) In so doing, the panel correctly invoked Supreme Court precedent questioning whether an administrative agency's "current position represents the best view of the law" when that agency "has repeatedly issued guidance to the public at odds with the interpretation it now asks us to adopt." (*Id.* (quoting *Bittner v. United States*, 598 U.S. 85, 97 (2023)).) The Commissioner's attempt to distance himself now from the IRS's long-standing guidance serves only to buttress the panel's opinion and undermines any claim that this is a question of exceptional importance.

**C. The "as such" language does not support the Commissioner's position.**

The Commissioner urges that the phrase "limited partner, as such" narrows the exception to "a partner who did not run the business"[5] and "reflects Congress's expectation that the role of limited partners was distinguishable from other roles." (Pet. at 12-13.) The panel addressed that argument and concluded that "'[a]s such' does not restrict or narrow the class of limited partners, nor does it upset the term's ordinary meaning." (Op. at 15.) Instead, it clarifies how a "dual-status partner"—

[5] Unlike in its briefing, the Commissioner uses the word "passive" only once in the Petition and equates it with a partner "not running the business." (Pet. at 4.)

an individual who serves as both a limited and general partner—is to be taxed. (*Id.* at 16.) As the panel explained, "[w]ithout the qualification, a dual-status partner might think his entire distributive share is not subject to taxation." (*Id.*)

**D. The Commissioner's "guaranteed payment" argument undermines his position.**

The Commissioner recognizes that the guaranteed-payments clause in section 1402(a)(13) reflects Congress's decision to tax payments for services actually rendered but then argues that this supports his interpretation of "the phrase 'limited partner' to mean a partner who did not run the business." (Pet. at 12-13.) The panel dismissed the Commissioner's argument that "some participation is permissible, but just not too much," reasoning that "it would be passing strange for Congress to go out of its way to include a long 'guaranteed payments' clause that cross-references another provision just to ensure that exceedingly small sums of money will be taxed." (Op. at 13.) The panel pointed out that "Congress could have stated that a limited partner did not qualify for the exception if it provided services to or on behalf of the partnership—something Congress did (just three paragraphs away) in § 1402(a)(10)." (*Id.*)

**E. The panel correctly concluded that the history of limited partnership law does not change the ordinary meaning of "limited partner."**

The Commissioner attempts to invoke pre-1977 dictionary definitions, treatises, cases, and the Uniform Limited Partnership Act as evidence that limited

partners were "universally understood" to be passive investors who could not exercise management or control. (Pet. at 3, 9-12.) But the panel considered the history of limited partnership law and easily concluded that it did not establish "that the limited partner exception only reaches passive investors." (Op. at 18.)

First, as the panel had already explained, "the agencies administering this provision and numerous dictionaries, including legal dictionaries, defined 'limited partner' by reference to the partner's limited liability protection." (Op. at 18.) Second, "state law on limited partnerships was in constant flux throughout the twentieth century," and the "only clear rule derivable from that ever-changing patchwork" is the one the panel applied: "a limited partner had limited liability." (*Id.*) Third, while many states and the Revised Uniform Limited Partnership Act of 1976 set some limits "on the ability of limited partners to participate in the control of the limited partnership, that does not change the core of what it *means* to be a limited partner." (*Id*. at 18-19.)

The Petition presents no compelling reason to reconsider the panel's reasoning or conclusion that the limited partnership exception is not a passive-investor exception.

**F. The panel correctly concluded that the legislative history does not change the ordinary meaning of "limited partner."**

The Commissioner plucks selected quotations from legislative history to argue that "limited partner" means "a partner who did not run the business." (Pet.

at 13.) But as the panel observed, "legislative history is 'generally of dubious value in statutory interpretation,'" and "'[w]here, as here,' textual arguments 'yield[] a clear answer, judges must stop.'" (Op. at 19 (first quoting *Deanda v. Becerra*, 96 F.4th 750, 763 (5th Cir. 2024); then quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)).) Nonetheless, the panel examined the entire legislative history and correctly concluded that it provides no support for the Commissioner's position that "limited partner" means "passive investor." (Op. at 19-20.)

## II. The Panel's Analytical Approach Follows Supreme Court Precedent and Does Not Improperly Incorporate State Law or Depend on State Law "Labels."

The Commissioner contends that the panel's decision forces federal tax law to "incorporate state law and turn on state-law labels, contrary to the Supreme Court's repeated admonition against such interpretations of tax statutes." (Pet. at iii.) The panel directly addressed and refuted this argument, and there is no reason for an en banc Court to revisit the panel's reasoning. (Op. at 16-18.)

The panel agreed that "the meaning of 'limited partner' in a federal tax statute 'is ultimately a question of federal law.'" (Op. at 16 (quoting *United States v. Craft*, 535 U.S. 274, 278 (2002)).) The panel's holding establishes a federal definition of "limited partner" under section 1402(a)(13): "a partner in a limited partnership that has limited liability." (*Id.* at 17.) Because limited partnerships are creatures of state

law, the panel looked "to state law to determine if those preconditions of the federal statutory definition are satisfied." (*Id.*)

This analytical approach follows long-standing Supreme Court precedent. The panel cited *Burnet v. Harmel*, 287 U.S. 103, 110 (1932), for the proposition that "'state law creates legal interests,' such as membership in a state-created entity like a limited partnership and limited liability, 'but the federal statute determines when and how they shall be taxed.'" (Op. at 16-17.) The panel also relied on the Supreme Court's rationale in *Morgan v. Commissioner*, 309 U.S. 78, 80-81 (1940), that "[s]tate law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." (Op. at 17.)

## III. The Commissioner's Unsupported Policy Arguments Do Not Warrant En Banc Rehearing.

Finally, the Commissioner argues that the panel's decision "approves an unwarranted pathway for tax avoidance" and threatens funding for Social Security and Medicare, estimating revenue at stake of approximately $500 million in pending matters. (Pet. at 18-19.) The Commissioner's arbitrary revenue estimates are not part of the record and are presented for the first time in the Petition with no support. Arguments not made before the Tax Court or the panel and arguments that are mere assertions in an en banc brief are waived. *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 348-49 (5th Cir. 2005) (en banc).

The Commissioner's suggestion that the panel's decision creates a "loophole" for "tax avoidance" (Pet. at 18-19) ignores the interplay of section 1402(a)(13) and the companion Social Security provisions, which the panel recognized. A "limited partner's pass-through share of partnership income (or loss) is exempt from the Social Security and Medicare tax imposed in § 1401." (Op. at 2.) It is also excluded when calculating the Social Security benefits of limited partners. "That creates a congruence between the taxes an individual pays and the benefits he is eligible to receive." (*Id.* at 3.) There is no windfall to the limited partner.

Congress has the power to amend section 1402(a)(13). The panel properly applied the statute as Congress wrote it. Policy disagreements with that statute are therefore properly directed to Congress, not to this Court sitting en banc.

## CONCLUSION

The Petition presents no question of exceptional importance warranting the time and review of the entire Court. The panel's holding that a "limited partner" in section 1402(a)(13) is "a partner in a limited partnership that has limited liability" is firmly grounded in the statutory text and the ordinary meaning of the term "limited partner" at the time of enactment and is confirmed by each of the IRS's and SSA's contemporaneous and longstanding interpretation of the term. The Commissioner does not even allege that any Supreme Court, Fifth Circuit, or other circuit court decision or state law precedent conflicts with the panel's holding. The

Commissioner's policy arguments—advanced for the first time in the Petition, without any support in or out of the record—do not warrant en banc rehearing. The proper venue for debating the Commissioner's policy arguments is in Congress, which has plenary authority to amend the statute. The Commissioner's request for en banc rehearing should be denied.

Dated: April 17, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *_/s/ Richard B. Phillips, Jr._*
Mary A. McNulty
Lee S. Meyercord
Richard B. Phillips, Jr.

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201

**Counsel for Appellants**

## CERTIFICATE OF SERVICE

I certify that on April 17, 2026, a true and correct copy of the foregoing was served on all parties and all counsel of record via the Court's CM/ECF system, and all parties and counsel have consented to service by this means.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1: this document contains 2,904 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point, Times New Roman font.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.