**No. 24-60240**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

K Alain, L.L.L.P.;
K Alain GP, L.L.C., Tax Matters Partner,

*Petitioners-Appellants*

v.

Commissioner of Internal Revenue,

*Respondent-Appellee*

---

Appeal from the United States Tax Court
Nos. 11587-20, 30118-21

---

# APPELLANTS' PETITION FOR REHEARING EN BANC

---


Mary A. McNulty
Lee S. Meyercord
Richard B. Phillips, Jr.
HOLLAND & KNIGHT, L.L.P.
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 964-9500

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Petitioners-Appellants**

K Alain, L.L.L.P.
K Alain GP, L.L.C.

**Counsel for Appellants K Alain, L.L.L.P. and K Alain GP, L.L.C.**

Mary A. McNulty
Lee S. Meyercord
Richard B. Phillips, Jr.
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

**Limited Partners of Appellant Sirius Solutions, L.L.L.P.**

Kenton Roess Chickering
The Estate of Kristi W. Chickering
Thomas Bauer
Mark Hendrix
Evelyn Aucoin
William Mansfield
Colleen Estes
James Jackson

**Counsel for Appellee Commissioner of Internal Revenue**

Ellen Page DelSole
Brett A. Shumate
Joshua Wu
U.S. Department of Justice
Washington, DC

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.
Attorney for Appellants

## RULE 40(B)(2) STATEMENT

Appellants K Alain, L.L.L.P. (formerly Sirius Solutions, L.L.L.P.) and K Alain GP, L.L.C. (formerly Sirius Solutions GP, L.L.C.), Tax Matters Partner (collectively, "Appellants"), petition for rehearing en banc. Rehearing en banc is warranted because this case involves a question of exceptional importance: the meaning of limited partner in section 1402(a)(13), which determines the self-employment tax obligations of hundreds of thousands of limited partners. 26 U.S.C. § 1402(a)(13).

The panel issued an opinion holding that a limited partner under section 1402(a)(13) is "a partner in a limited partnership that has limited liability." *Sirius Solutions, L.L.L.P. v. Comm'r*, 165 F.4th 374, 377-78 (5th Cir. 2026) (the "Original Opinion"). That holding was supported by the statutory text, contemporaneous dictionary definitions, over 40 years of IRS instructions, and a Social Security Administration ("SSA") regulation. The Original Opinion provided a clear, administrable rule that taxpayers could apply with certainty.

After the Commissioner sought rehearing, the panel withdrew the Original Opinion and issued a revised opinion ("Revised Op.") holding that limited partner means "a partner who plays no significant role in managing or running a business." Revised Op. at 1. The Revised Opinion traded a clear bright-line definition for a new fact-intensive test. The Revised Opinion is based on dictionary definitions and

uniform limited partnership laws explaining that a partner who controls or manages the partnership may jeopardize their limited liability.

But the Revised Opinion mischaracterizes the control test applicable when section 1402(a)(13) was enacted. In 1977, limited partners could engage in extensive management activities—including serving as an employee, making strategic decisions, and acting as an officer or manager of the general partner—without being considered to "control" the partnership. Therefore, when enacting section 1402(a)(13), Congress could not have understood limited partner to exclude a partner who manages or runs the business. Instead, Congress must have understood it to mean exactly what the SSA and IRS thought for over 40 years—a partner in a limited partnership with limited liability.

The Revised Opinion's amorphous "management or control" test will leave hundreds of thousands of limited partners unable to determine whether they qualify for the limited-partner exception to self-employment tax. The issue has direct implications for Social Security and Medicare funding, as section 1402(a)(13) was enacted as part of the Social Security Amendments of 1977.

The confusion is compounded by the Second Circuit's recent decision in *Soroban Capital Partners LP v. Commissioner*, Nos. 25-2079, 25-2250, 2026 WL 2751819 (2d Cir. Sept. 17, 2026). The Second Circuit affirmed the Tax Court's decision, holding that a limited partner under section 1402(a)(13) is "one who has

limited liability and who does not run, manage, or otherwise exert control or managerial authority over the partnership." *Id.* at *18. The Second Circuit disregarded the long-standing contemporaneous agency interpretations and looked instead to legislative history and an interpretation of "control" divorced from limited-partnership law in 1977.

The Second Circuit viewed its holding as aligned with this Court's Revised Opinion and observed that "there appears to be little daylight between the Fifth Circuit's position and the Tax Court's holding in *Soroban II*." *Id.* at *18 n.16. Yet this Court's dissenting judge and IRS disagree, maintaining that the Tax Court's test and the Revised Opinion's test are materially different. *See* Resp.'s Notice of Judicial Rulings, *Point72 Asset Mgmt., L.P. v. Comm'r*, No. 12752-23 (T.C. filed Sept. 18, 2026) (urging the Tax Court to follow the Second Circuit's opinion and not the Fifth Circuit's opinion). Thus, the Revised Opinion causes considerable uncertainty for limited partners who must determine each year whether they qualify for the limited-partner exception. The full Court should grant rehearing to restore the Original Opinion or, at a minimum, clarify the new test.

## TABLE OF CONTENTS

Page

Certificate Of Interested Persons ..... i

Rule 40(b)(2) Statement ..... ii

Index of Authorities ..... vii

Statement of the Issue ..... 1

Background ..... 1

Argument ..... 3

I. The Revised Opinion's management test is inconsistent with the law at the time of enactment and statutory text, and the test is unworkable. ..... 4

A. In 1977, limited partners could manage and run the partnership without violating the control test. ..... 4

B. The Revised Opinion's control test is unworkable. ..... 6

C. The statute's treatment of dual-status partners confirms that limited partner does not mean a partner who does not "manage or run" the business. ..... 7

II. The Original Opinion correctly held that a limited partner is a partner in a limited partnership with limited liability. ..... 9

A. Contemporaneous dictionary definitions confirm that limited liability was the touchstone of a "limited partner." ..... 9

B. The IRS's own longstanding instructions confirm the Original Opinion's limited-liability based definition. ..... 11

C. The SSA's contemporaneous regulation confirms the Original Opinion's limited-liability definition. ..... 12

III. At a minimum, this Court should clarify that only "control" that jeopardizes limited liability under state law removes a limited partner from section 1402(a)(13). ..... 13

Page

Conclusion ....................................................................................................15

Certificate of Service ...............................................................................................16

Certificate of Compliance .........................................................................................17

---

Appendix

A — Panel Opinion.........................................................................Tab A

## INDEX OF AUTHORITIES

Page

### CASES


*Aquilino v. United States*,
363 U.S. 509 (1960) .......... 14

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 11

*Burnet v. Harmel*,
287 U.S. 103 (1932) .......... 14

*Campbell v. Comm'r*,
943 F.2d 815 (8th Cir. 1991) .......... 4

*Frigidaire Sales Corp. v. Union Props., Inc.*,
562 P.2d 244 (Wash. 1977) .......... 4

*Gen. Motors Acceptance Corp. v. Whisnant*,
387 F.2d 774 (5th Cir. 1968) .......... 13

*Glaze v. United States*,
641 F.2d 339 (5th Cir. 1981) .......... 14

*Grainger v. Antoyan*,
313 P.2d 848 (Cal. 1957) .......... 4

*Howard Hughes Co., L.L.C. v. Comm'r*,
805 F.3d 175 (5th Cir. 2015) .......... 8

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 11

*Morgan v. Comm'r*,
309 U.S. 78 (1940) .......... 14

*Silvola v. Rowlett*,
272 P.2d 287 (Colo. 1954) .......... 4

Page

*Sirius Solutions, L.L.L.P. v. Comm'r*,
165 F.4th 374 (5th Cir. 2026) .................................................................*passim*

*Soroban Capital Partners LP v. Commr,*
Nos. 25-2079, 25-2250, 2026 WL 2751819 (2d Cir.
Sept. 17, 2026) ................................................................................ iii, iv, 7

*Soroban Capital Partners LP v. Comm'r*,
161 T.C. 310 (2023)..........................................................................................1

*Stafford v. United States*,
611 F.2d 990 (5th Cir. 1980) .........................................................................4

**STATUTES**

26 U.S.C. § 1256(e)(3)(C)(i)..........................................................................8, 9

26 U.S.C. § 1402(a)(13)................................................................................*passim*

42 U.S.C. § 411(a)(12)..........................................................................................12

Del. Code Ann. tit. 6, § 17-303...........................................................................13

Del. Code Ann. tit. 6, § 17-404.............................................................................7

59 Del. Laws c. 105 (1973)....................................................................................5

**OTHER AUTHORITIES**

20 C.F.R. § 404.1080(b)(3) (1980) .....................................................................12

Anderson's Dictionary of Law (1913)......................................................................9

Black's Law Dictionary (5th ed. 1979) ..............................................................9, 10

Black's Law Dictionary (Rev. 4th ed. 1968).........................................................10

Cochran's Law Dictionary (1977) ..........................................................................9

Cyclopedic Law Dictionary (1940) .........................................................................9

Revised Uniform Limited Partnership Act (1976) ..........................................5, 7, 13

Page

Uniform Limited Partnership Act (1916) ................................................................13

Webster's Third New International Dictionary (1971, 1981) ....................................9

## STATEMENT OF THE ISSUE

Does "limited partner" in 26 U.S.C. § 1402(a)(13) mean a partner in a limited partnership who has limited liability—as contemporaneous dictionaries, the IRS's own longstanding instructions, and the SSA's regulation all provide—or does it mean "a partner who plays no significant role in managing or running a business," as the Revised Opinion held?

## BACKGROUND

This case involves the meaning of limited partner in section 1402(a)(13), which excludes from self-employment income "the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership." 26 U.S.C. § 1402(a)(13). This is a question of first impression in this Circuit that is also before the First and Second Circuits.

Sirius Solutions was a Delaware limited liability limited partnership. The Commissioner determined that the limited partners' distributive shares were subject to self-employment tax because they were not "limited partners" under section 1402(a)(13). The Tax Court sustained the Commissioner's determination, applying the functional "passive investor" test from *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310 (2023).

A panel of this Court (Judges Graves, Engelhardt, and Oldham) issued the Original Opinion. Writing for the majority, Judge Oldham held that a limited partner under section 1402(a)(13) is "a partner in a limited partnership that has limited liability." 165 F.4th at 377-78. The Original Opinion was grounded in contemporaneous dictionary definitions, the IRS's Form 1065 instructions from 1978 through 2022, the SSA's 1980 regulation, the statutory text, and Congress's use of different language in neighboring provisions. The panel vacated the Tax Court's decision and remanded. Judge Graves dissented, contending that the Tax Court's functional "passive investor" standard should apply. *Id.* at 388-99.

The Commissioner petitioned for rehearing en banc. The panel withdrew the Original Opinion and issued the Revised Opinion per curiam. The Revised Opinion adopted a new standard—a limited partner is "a partner who plays no significant role in managing or running a business"—but still vacated and remanded. Revised Op. at 1. The Revised Opinion focused on dictionary definitions, state law, and treatises explaining that in exchange for limited liability, a limited partner may not "control" the partnership. From these limited sources, the Revised Opinion held that a limited partner is one that does not play a significant role in managing or running the business. Judge Graves again dissented, still favoring the functional "passive investor" test. Revised Op. at 12.

## Argument

This Court should grant rehearing en banc and restore the Original Opinion, defining limited partner as a partner in a limited partnership with limited liability. The Revised Opinion's "management or control" test is inconsistent with the law in 1977, which allowed limited partners to play a significant role in managing and running the business. The new definition creates an unworkable facts-and-circumstances test, leaving hundreds of thousands of limited partners uncertain whether they qualify for the limited-partner exception, and will lead to litigation and inconsistent and unpredictable outcomes. Finally, the Revised Opinion's definition is inconsistent with the statutory language making clear that a partner who is both a general partner and a limited partner (a dual-status partner) is exempt on the distributive share received as a limited partner.

By contrast, the Original Opinion's limited-liability focused definition provided a bright-line administrable rule grounded in the statutory text, contemporaneous dictionaries, and the interpretations of two agencies charged with administering the statute.

## I. The Revised Opinion's management test is inconsistent with the law at the time of enactment and statutory text, and the test is unworkable.

### A. In 1977, limited partners could manage and run the partnership without violating the control test.

If Congress understood the meaning of limited partner to take into account "control," the relevant analysis is what was considered "control" in 1977. State courts consistently held that providing significant business services to the partnership—including serving as an employee, making major business decisions, advising the general partner, and acting as a sales manager—did not constitute "control" of the partnership. *See, e.g.*, *Silvola v. Rowlett*, 272 P.2d 287, 290-91 (Colo. 1954) (limited partner served as shop foreman, made purchasing decisions, and advised general partner without losing limited liability); *Grainger v. Antoyan*, 313 P.2d 848, 852-53 (Cal. 1957) (limited partner acted as sales manager and extended loans without losing limited liability); *Frigidaire Sales Corp. v. Union Props., Inc.*, 562 P.2d 244, 245-47 (Wash. 1977) (limited partners exercised "day-to-day control and management" as the officers and directors of the corporate general partner without losing limited liability); *see also Stafford v. United States*, 611 F.2d 990, 994 (5th Cir. 1980) (limited partner negotiated a hotel development); *Campbell v. Comm'r*, 943 F.2d 815, 816 (8th Cir. 1991) (limited partner in 1979 identified properties, negotiated acquisition, obtained financing, and organized the partnerships that would acquire the properties).

The Revised Uniform Limited Partnership Act ("RULPA"), promulgated in 1976, codified this narrow understanding of control by including an extensive list of safe-harbor activities that limited partners could perform without triggering the control test. These included serving as an "employee of the limited partnership or of a general partner"; "consulting with and advising a general partner with respect to the business of the limited partnership"; "acting as surety for the limited partnership"; and voting on partnership matters such as "dissolution and winding up" or "a change in the nature of the business." RULPA § 303(b) (1976). Deciding whether the partnership dissolves or changes its business model and being a manager or officer of a general partner are all activities that could be considered managing or running the business. Yet they were all expressly permitted under the RULPA, the statute that the Revised Opinion viewed as providing "key insight" into the meaning of "limited partner." Revised Op. at 7.

Likewise, in 1973, Delaware enacted a similar statute expressly permitting limited partners to consult with and advise general partners, act as surety for the partnership, elect or remove a general partner, and approve or disapprove material partnership matters—all without being deemed to "control" the limited partnership and losing limited liability. 59 Del. Laws c. 105 (1973).

Thus, to suggest that "limited partners" may not participate in management or run the business is inconsistent with what limited partners could do in 1977 when

section 1402(a)(13) was enacted. Therefore, the ordinary public meaning of limited partner in 1977 could not mean a partner who "plays no significant role in managing or running a business" because limited partners in 1977 were permitted to, and did, exactly that.

### B. The Revised Opinion's control test is unworkable.

The Original Opinion provided a clear, administrable, bright-line rule: a limited partner is a partner in a limited partnership who has limited liability. Taxpayers could easily determine their self-employment tax obligations by looking at their state-law status. The Revised Opinion replaces this clarity with a facts-and-circumstances standard with no meaningful guidance. It merely announces that a limited partner can "not manage the partnership…but perhaps could participate in certain non-managerial aspects of the business." Revised Op. at 9. Open questions abound regarding what decision-making authority qualifies as managing or running the business and what constitutes participating in non-managerial aspects. The Revised Opinion offers no factors, no safe harbors, and no line between permissible and impermissible activities.

This uncertainty's consequences are significant. As the Original Opinion recognized:

> [H]ow are thousands of limited partners across the country to determine ex ante what their tax liability will be? The short answer: Only with the help of an army of lawyers and accountants—and a whole lot of luck.

165 F.4th at 383. Hundreds of thousands of limited partners—including those who relied on the IRS's instructions for decades—will be unable to determine whether they are subject to the limited-partner exception.

In the wake of this uncertainty, the Revised Opinion's amorphous "no significant role in managing or running a business" standard will lead to extensive litigation and unpredictable and inconsistent outcomes. As the Original Opinion recognized, a functional facts-and-circumstances approach "would likely lead to even more disuniformity" because "there would likely be a great deal of litigation about how much participation in the partnership is too much" and "it might result in disagreement among the courts, thereby creating disuniformity." 165 F.4th at 385. Indeed, the Second Circuit and the dissenting Judge here disagree on whether this Court overturned the Tax Court's passive-investor test or adopted it. *See Soroban*, 2026 WL 2751819, at *18 n.16; Revised Op. at 15.

### C. The statute's treatment of dual-status partners confirms that limited partner does not mean a partner who does not "manage or run" the business.

The statutory text that allows for dual-status partners—partners who are both limited partners and general partners—makes clear that limited partner does not mean a partner who does not "manage or run" the business. At the time of enactment (and today), state law expressly permitted a person to serve as both a general partner and a limited partner in the same partnership. *See* RULPA § 303(a) (1976); Del.

Code Ann. tit. 6, § 17-404. As the Original Opinion recognized, the phrase "limited partner, as such" in section 1402(a)(13) clarifies "how individuals who serve as both a limited and a general partner are to be taxed." 165 F.4th at 383-84. The distributive share received in a partner's limited partner-capacity qualifies for the exception, but that received as a general partner does not.

The Revised Opinion's new test renders the "as such" language meaningless. Under the Revised Opinion, a general partner manages and controls the partnership. Therefore, a general partner who also holds a limited-partner interest is never subject to the limited-partner exception, rendering the "as such" language meaningless. Thus, the Revised Opinion's management-focused definition violates a fundamental canon of statutory interpretation by rendering words meaningless. *Howard Hughes Co., L.L.C. v. Comm'r*, 805 F.3d 175, 183 (5th Cir. 2015).

The Original Opinion's limited-liability test, by contrast, gives coherent meaning to the dual-status partner provision: the partner's distributive share received as a limited partner is exempt, whereas the share received as a general partner is not.

Other Internal Revenue Code provisions confirm that Congress did not understand limited partner to mean someone who does not manage or control the business. For example, in section 1256(e)(3)(C)(i)—enacted just four years after section 1402(a)(13)—Congress used "limited partner" but expressly excluded from limited-partner status anyone "who actively participates…in the management" of

the partnership. 26 U.S.C. § 1256(e)(3)(C)(i). If limited partner already meant someone who does not manage the business, this express exclusion would be unnecessary.

## II. The Original Opinion correctly held that a limited partner is a partner in a limited partnership with limited liability.

The Original Opinion's holding—that a limited partner is a partner in a limited partnership who has limited liability—was the product of careful textual analysis. The Original Opinion looked to contemporaneous dictionary definitions, 40 years of IRS instructions, and the SSA's regulation, which all defined limited partner as a partner in a limited partnership with limited liability.

### A. Contemporaneous dictionary definitions confirm that limited liability was the touchstone of a "limited partner."

The Original Opinion canvassed contemporaneous dictionary definitions of limited partner and identified limited liability as the touchstone. 165 F.4th at 378-79. Webster's Third New International Dictionary (1971, 1981) defined a limited partner as a partner whose liability is "limited to the amount of capital he has contributed to the partnership." *Id.* at 378. Black's Law Dictionary (5th ed. 1979) described a limited partner as one "who is not liable… beyond his capital contribution." Anderson's Dictionary of Law (1913), Cyclopedic Law Dictionary (1940), and Cochran's Law Dictionary (1977) all defined limited partner principally by reference to limited liability. *Id.* at 378.

The Revised Opinion disregarded these dictionary definitions and instead cherry-picked one portion of a 1979 definition stating that limited partners "take no part in running business." Revised Op. at 5 (citing *Limited Partnership*, Black's Law Dictionary (5th ed. 1979)).[1] But it overlooked that the definition's operative clause defined limited partners by their limited financial liability. *Limited Partnership*, Black's Law Dictionary (5th ed. 1979). The two other definitions in the Revised Opinion are not contemporaneous with enactment. The Original Opinion's analysis was more faithful to contemporaneous evidence.

Further, as explained above, limited partners were allowed to significantly participate in managing and running the business in 1977, when section 1402(a)(13) was enacted. Appellants do not dispute that limited partners who participate in "control" of the partnership may lose their limited liability. But the "ordinary public meaning" of limited partner in 1977 could not be based on management when the control test at that time allowed limited partners to manage the business. The plain text of section 1402(a)(13) supports a test that focuses on whether a partner has limited liability.

---

1 The 4th edition of Black's (which was the current edition in 1977) did not have this language. *See Partnership*, Black's Law Dictionary (Rev. 4th ed. 1968).

### B. The IRS's own longstanding instructions confirm the Original Opinion's limited-liability based definition.

From 1978 through 2022—over 40 consecutive years—the IRS's Form 1065 instructions defined a limited partner as "one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." Internal Revenue Serv., U.S. Dep't of the Treasury, Form 1065 Instructions 2 (2015); *see also Sirius Solutions*, 165 F.4th at 379-81. The instructions never mentioned management, control, or a passive-investor test. Not once.

This longstanding, contemporaneous agency interpretation is entitled to significant weight. Under *Loper Bright Enterprises v. Raimondo*, agency interpretations "issued contemporaneously with the statute at issue, and which have remained consistent over time" are "especially useful in determining" the meaning of an ambiguous statute. 603 U.S. 369, 394 (2024). The IRS's instructions satisfy both criteria: they were first issued in 1978—one year after section 1402(a)(13) was enacted—and they remained unchanged for over four decades. This evidence's significance is amplified by the Supreme Court's admonition in *Bittner v. United States*, that when "the government has repeatedly issued guidance to the public at odds with the interpretation it now asks us to adopt[,] that counts as one more reason yet to question whether its current position represents the best view of the law." 598 U.S. 85, 97 (2023).

Even the Revised Opinion acknowledged that the IRS instructions defined limited partner solely by limited liability. Revised Op. at 10. But the Revised Opinion did not explain why the IRS's own contemporaneous understanding should be disregarded in favor of a standard that neither the IRS nor any other agency ever adopted or even propounded until several months ago.

### C. The SSA's contemporaneous regulation confirms the Original Opinion's limited-liability definition.

Congress enacted section 1402(a)(13) as part of the Social Security Amendments of 1977. Its companion provision in the Social Security Act—42 U.S.C. § 411(a)(12)—uses identical language. The SSA, the agency Congress charged with administering the companion provision, promulgated a regulation in 1980 defining limited partner by reference to limited liability: "You are a 'limited partner' if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership." 20 C.F.R. § 404.1080(b)(3) (1980). The regulation then provided "[g]enerally, you will not have to perform services." *Id.* However, as the Original Opinion correctly pointed out, this "statement does not say that such partners cannot or generally do not perform services for the partnership" and therefore does not change "the SSA's liability-focused interpretation of 'limited partner.'" 165 F.4th at 381.

That regulation remains in effect today—over 45 years after promulgation—and has never been amended. The agency that Congress specifically tasked with

administering the companion Social Security provision understood limited partner to mean a partner with limited liability. Particularly since the IRS's guidance for over 40 years was consistent with the SSA's regulation, these virtually identical, companion provisions must be construed together (*in pari materia)*, as provided in the SSA's regulation. *See Gen. Motors Acceptance Corp. v. Whisnant,* 387 F.2d 774, 775 (5th Cir. 1968).

## III. At a minimum, this Court should clarify that only "control" that jeopardizes limited liability under state law removes a limited partner from section 1402(a)(13).

If the Court does not restore the Original Opinion, it should at a minimum clarify that a partner who has not participated in control of the business to a degree that would jeopardize limited-liability status satisfies the limited-partner exception in section 1402(a)(13). This holding would reconcile the Original Opinion's limited-liability analysis with the Revised Opinion's control framework and be consistent with dictionary definitions at the time of enactment.

Under every version of the Uniform Limited Partnership Act ("ULPA") and RULPA, a limited partner who participates in "control of the business" risks losing limited liability. ULPA § 7 (1916); RULPA § 303 (1976). Delaware law—the state of formation for many of the nation's limited partnerships—similarly provides that a limited partner who "participates in the control of the business" becomes liable as a general partner. Del. Code Ann. tit. 6, § 17-303. Thus, a partner who retains

limited liability under state law has, by definition, not exercised the kind of management or control that would disqualify the partner under the Revised Opinion's own standard.

This clarification would provide much-needed guidance to taxpayers. Rather than embarking on an open-ended inquiry into the nature and extent of a partner's management activities—with no factors, no safe harbors, and no clear line—taxpayers could look to their state-law status to determine whether they have crossed the threshold. The Court should hold that if the partner has not exercised sufficient control to lose limited liability, the partner has not exercised sufficient control to lose limited-partner status under section 1402(a)(13). This approach respects the Revised Opinion's premise while providing a clear administrable rule for taxpayers.

This would not, as the Commissioner has argued, make federal law dependent on state law. State law determines the nature of property rights and federal law determines how such interests are taxed. *Burnet v. Harmel*, 287 U.S. 103, 110 (1932). Looking to state law to determine a taxpayer's status or legal interests to be taxed is routine. State law applies to identify property rights, trust interests, inheritance rights, marital property rights, and marital status. *See, e.g.*, *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960) (property rights); *Morgan v. Comm'r*, 309 U.S. 78, 80-81 (1940) (trust interests); *Glaze v. United States*, 641 F.2d 339, 342 (5th Cir. 1981) (marital status). Federal law then applies to determine how such

interests are taxed. Interpreting limited partner to mean a partner in a limited partnership with limited liability does not make state law supreme. It simply gives effect to the ordinary meaning of the term Congress chose.

## CONCLUSION

Appellants request that the Court grant rehearing en banc. The Court should restore the Original Opinion's clear and administrable holding that a limited partner under section 1402(a)(13) is a partner in a limited partnership who has limited liability. In the alternative, if the Court retains the Revised Opinion's "management or control" framework, the Court should clarify that a partner who retains limited liability under state law has not exercised "significant management or control" and therefore qualifies as a limited partner under section 1402(a)(13).

Dated: September 28, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *_/s/ Richard B. Phillips, Jr._*
Mary A. McNulty
Lee S. Meyercord
Richard B. Phillips, Jr.

One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 964-9500

*Counsel for Petitioners-Appellants*

## CERTIFICATE OF SERVICE

I certify that on September 28, 2026, a true and correct copy of the foregoing Petitioners-Appellants' Petition for Rehearing En Banc was served on all parties and all counsel of record via the Court's CM/ECF system, and all parties and counsel have consented to service by this means.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) and 5th Cir. R. 35.2 because it contains 3,827 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f).

This petition also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

**TAB**
**A**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 12, 2026
Lyle W. Cayce
Clerk

No. 24-60240

K Alain, L.L.L.P.; K Alain GP, L.L.C.; Tax Matters Partner,

*Petitioners—Appellants*,

*versus*

Commissioner of Internal Revenue,

*Respondent—Appellee*.

Appeal from the United States Tax Court
Nos. 11587-20, 30118-21

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:

The petition for rehearing en banc is DENIED. Treating the petition for rehearing en banc as a petition for rehearing, the petition for rehearing is GRANTED. We withdraw our prior opinion, *Sirius Solutions, L.L.L.P. v. Commissioner of Internal Revenue*, 165 F.4th 374 (5th Cir. 2026), and substitute the following.

This case concerns the meaning of the term "limited partner" in 26 U.S.C. § 1402(1)(13). Today, we hold its original public meaning is a partner who plays no significant role in managing or running a business. Thus, we

VACATE and REMAND so the Commissioner may consider whether the partners at issue fall within that meaning of § 1402(1)(13).

I

A

The Internal Revenue Code imposes a Social Security and Medicare tax based on every individual's earnings. SOCIAL SECURITY ADMINISTRATION, UNDERSTANDING THE BENEFITS 3 (2025). This applies to the income of those who are employed by another, *see* 26 U.S.C. § 3101, as well as "the self-employment income of every individual," *id.* § 1401(a). This case concerns the self-employment tax liability of limited partners.

The term "self-employment income" is defined as "the net earnings from self-employment derived by an individual . . . during any taxable year." *Id.* § 1402(b). And "net earnings from self-employment" includes, as relevant here, an individual's "distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member." *Id.* § 1402(a).

This case turns on an exception "in computing . . . such distributive share" for limited partners. *Ibid.* The Code provides:

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

*Id.* § 1402(a)(13). Putting these provisions together, a limited partner's pass-through share of partnership income (or loss) is exempt from the Social Security and Medicare tax imposed in § 1401. This tax exception for limited partners has remained unchanged since its adoption as part of the Social

Security Amendments of 1977. *See* An Act to Amend the Social Security Act and the Internal Revenue Code of 1954 to Strengthen the Financing of the Social Security System, and for Other Purposes, Pub. L. No. 95-216, § 313(b), 91 Stat. 1509, 1536.

So, to review, payments to limited partners for "services actually rendered" to the partnership are subject to Social Security and Medicare taxation. But the pass-through share of partnership income of a "limited partner, as such" is not.

B

Sirius Solutions, L.L.L.P. ("Sirius") is a limited liability limited partnership formed under Delaware state law.[1] Sirius operates a business consulting firm based in Houston, Texas, with additional offices in Dallas, Texas, and London, England. Sirius Solutions GP, L.L.C. ("Sirius GP"), also formed under Delaware law, is the tax matters partner ("TMP") of Sirius. *See* 26 U.S.C. § 6231(a)(7) (defining tax matters partner).

This appeal concerns Sirius's federal tax returns from 2014, 2015, and 2016. In 2014, Sirius was owned by nine limited partners and one general partner, Sirius GP. At the time, Sirius GP held a .6457% interest in the partnership. Four limited partners sold their partnership interests in 2014, so in 2015 and 2016, there were five limited partners alongside Sirius GP, the general partner. During those latter two years, Sirius GP held a .7529% interest in the partnership.

Sirius reported ordinary business income of $5,829,402 in 2014, $7,242,984 in 2015, and –$490,291 in 2016. Sirius allocated all that income

[1] Sirius Solutions, L.L.L.P. is now called K Alain L.L.L.P. For the sake of clarity, we refer to the K Alain entities by their prior names.

to its limited partners. Relying on the limited partnership tax exception, Sirius excluded the limited partners's distributive shares of partnership income (or loss) from its calculation of net earnings from self-employment during those years. So it reported $0 of net earnings from self-employment.

In June 2020, following an audit of Sirius's 2014 tax returns, the Commissioner of Internal Revenue issued to Sirius GP a Notice of Final Partnership Administrative Adjustment ("FPAA") concerning the 2014 return. The IRS determined that the distributive share exception in § 1402(a)(13) did not apply because none of Sirius's limited partners counted as "limited partners" for purposes of the statutory exception. So the IRS adjusted Sirius's net earnings from self-employment reported on the 2014 tax return from $0 to $5,915,918. In September 2020, Sirius petitioned the Tax Court for readjustment of its 2014 tax return.

The IRS also audited Sirius's 2015 and 2016 tax returns. In June 2021, the IRS issued more FPAAs to Sirius GP. These adjusted the net earnings from self-employment from $0 to $7,372,756 and –$490,291 respectively. In September 2021, Sirius filed a second petition to the Tax Court seeking readjustment for the 2015 and 2016 tax returns. The two cases were consolidated.

On February 20, 2024, the Tax Court rejected Sirius's challenges and upheld the adjustments. It reasoned that it was bound by a recent Tax Court decision, *Soroban Capital Partners LP v. Commissioner*, 161 T.C. 310 (2023). In that decision, the Tax Court held that for purposes of § 1402(a)(13), the term "limited partners" only "refer[s] to passive investors." *Soroban*, 161 T.C. at 320. Sirius timely appealed to this court.

## II

The sole question on appeal is what "limited partner" means in § 1402(a)(13). We hold the ordinary public meaning of this phrase is a partner who plays no significant role in managing or running a business.

### A

Two principles guide our inquiry. First, tax law is federal law. Once "it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute,] state law is inoperative." *United States v. Bess*, 357 U.S. 51, 55 (1958); *see also Burnet v. Harmel*, 287 U.S. 103, 110 (1932). Second, the Tax Code's phrase "limited partner" is undefined. Thus, our job is determining what, as a matter of federal law, the phrase "limited partner" in § 1402(a)(13) means. To do so, we "interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Contemporaneous legal dictionaries defined a "limited partnership" as a partnership with general partners "who manage business" and limited partners who "contribute capital and share in profits but . . . take no part in running business." *Limited Partnership*, BLACK'S LAW DICTIONARY (5th ed. 1979); *see also Limited Partnership*, BLACK'S LAW DICTIONARY (4th ed. [rev.] 1968) (similar). Such definitions are probative of original meaning. *See Belt v. EmCare, Inc.*, 444 F.3d 403, 412 (5th Cir. 2006) ("[W]e routinely consult dictionaries as a principal source of ordinary meaning . . . .").

These dictionaries are not outliers. Indeed, for more than one hundred years, lexicographers have captured similar definitions of "limited" partnerships. *See, e.g.*, S. RAPALJE & R.L. LAWRENCE, DICTIONARY OF AMERICAN AND ENGLISH LAW 932 (1888) (explaining a "particular (limited or special) partnership" features "general partners . . . by whom the

business is conducted . . . and one or more special partners, who contribute in cash a specific sum as capital . . . and who are not liable for the debts of the partnership"); *Limited Partnership*, Black's Law Dictionary (12th ed. 2024) (defining a "limited partner" as "one or more persons who contribute capital and share profits but who cannot manage the business and are liable only for the amount of their contribution"). While such texts are not dispositive of the original public meaning, they reveal a common, mainstream definition of "limited partner" that turns on the role partners played in the enterprise.

Dictionaries are not the only source from which we draw our interpretation. Consider the context in which Congress enacted the relevant provision. In 1916, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Limited Partnership Act ("ULPA"), which was adopted in various forms by nearly all American States. Leonard Charles Schwartz, *The Uniform Limited Partnership Act: Are the Recent Changes Improvements?*, 93 Dick. L. Rev. 555, 555–56 (1989). The ULPA stated that a "limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Uniform Limited Partnership Act: Drafted by the National Conference of Commissioners on Uniform State Laws and by it Approved and Recommended for Enactment in all the States at its Conference at Chicago, Illinois 11 (1916). In 1976, the Conference's revised version of that 1916 law, the Revised Uniform Limited Partnership Act, carried over the same test. Uniform Limited Partnership Act (1976), 85 Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Annual Conference Meeting 171, 185 (1976). While States had not adopted the revised uniform law by the time

Congress amended the relevant section of the Tax Code, the 1916 definition and the ratification of that definition in the 1976 changes provide key insight into the ordinary understanding of "limited partner" in 1977. *See* Mary E. Brumder, Comment, *Investor Protection and the Revised Uniform Limited Partnership Act*, 56 WASH. L. REV. 99, 100–01 (1980).

Contemporaneous treatises point towards the same result. One treatise explained that limited partners "are members of statutory limited partnerships, typically sharing profits, immune from personal liability for firm debts, and not participating in management." A.R. BROMBERG, CRANE AND BROMBERG ON PARTNERSHIP 141 (1968). Another treatise explained that "it has always been difficult to justify immunity from a debt that was incurred by one of the actual managers or directors of an enterprise, and thus the limited partners, in return for immunity, must refrain from any participation in the management or control the business, to include control over any of the managing partners." H.G. REUSCHLEIN & W.A. GREGORY, HANDBOOK ON THE LAW OF AGENCY AND PARTNERSHIP 435 (1979).

While it does not appear that our court passed on the definition of "limited partner" around the time the relevant statute was enacted, at least one of our sister circuits did. *See Plasteel Prods. Corp. v. Helman*, 271 F.2d 354, 356 (1st Cir. 1959). The *Plasteel* court recognized that if a partner controlled partnership affairs, the partner was no longer functioning as a limited partner. *Ibid.* But it suggested a limited partner could have lesser involvement. *Ibid.* For example, it noted that a limited partner could sign the partnership agreement as a general partner without losing his limited-partner status. *Ibid.* (citing *Rathke v. Griffith*, 218 P.2d 757, 757 (Wash. 1950)). While *Plasteel* turned on state law, not federal tax law, it nonetheless formed part of the backdrop against which Congress enacted § 1402(a)(13) in 1977. And that backdrop suggests *some* participation is allowed, so long as the partners do

not exercise *control* over the business. *Contra post*, at 23 (arguing that *Plasteel* does not allow for such a distinction).

Because the plain text of the statute points towards this conclusion, we are unmoved by the dissent's citation to Tax Court and circuit precedent interpreting different statutes. *See post*, at 16–19, 23–24. With due respect to the Tax Court, federal courts decide relevant questions of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398 (2024). And even "[y]ears of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506 (5th Cir. 2026). What's more, as to the dissent's circuit authority, neither out-of-circuit nor in-circuit precedent about securities law (and other non-§ 1402 topics) can overcome the plain text of a duly enacted statute. *Contra post*, at 23–24.[2]

Likewise, we are unconvinced by the dissent's parade of horribles. *Id.* at 15. This critique hypothesizes that our rule will result in bad policy consequences. *Ibid.* But this court's job is to "discern and apply the law's plain meaning as faithfully as we can, not 'to assess the consequences of each approach and adopt the one that produces the least mischief.'" *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 246 (2021) (quoting *Lewis v.*

[2] Even worse for the dissent, many of its cases support the idea that limited partners may play a small role in a company. *See, e.g.*, *Marin TV Servs. Partners, Ltd. v. FCC*, 993 F.2d 261, 262, 264 (D.C. Cir. 1993) (focusing on active participation and "material" participation); *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 152 (3d Cir. 1997) (allowing for nominal or limited responsibilities); *Masel v. Villarreal*, 924 F.3d 734, 744 (5th Cir. 2019) ("Nonetheless, even a limited partnership interest may not be a security when limited partners *are given such managerial control* that it can no longer be said that the limited partners are dependent on the entrepreneurial skills of the promoter or a third party." (emphasis added)).

*Chicago*, 560 U.S. 205, 217 (2010)). Here, we apply the plain text. Nothing more.

At bottom, all relevant sources suggest that, in 1977, the ordinary public meaning of "limited partner" included a partner who did not play a significant role in managing or running the business.

B

In adopting this reading, we reject the Tax Court's *Soroban* decision. In *Soroban*, the Tax Court selected a rule divorced from statutory text and that appears to prohibit even the most minor involvement in corporate affairs. The Tax Court held that the term "limited partner" could refer only to "passive investors." *Soroban*, 161 T.C. at 321. With just a few sentences of operative analysis—citing *no* contemporary textual authority—the Tax Court insisted that "limited partner, *as such*" somehow denoted more than limited liability. *Id.* at 320 (emphasis added). The Tax Court then said, without significant analysis, that this required a "passive investor" rule. *Ibid.* The Tax Court made no attempt to ground its rule in the original public meaning of "limited partner" in 1977.[3]

In our view, that was erroneous. An informed reader of the English language in 1977 would have understood that a "limited partner" could not *manage* the partnership, *see Limited Partnership*, BLACK'S LAW DICTIONARY (5th ed. 1979), but perhaps could participate in certain *non-managerial* aspects of the business, *see Plasteel*, 271 F.2d at 356. That is a different and more refined analysis than the one the Tax Court offered in *Soroban*. And most importantly, the managerial/non-managerial distinction

[3] Given our interpretation of the Tax Code's plain text rejects *Soroban* and thus decides the issue on appeal, we need not discuss additional Tax Court precedents like *Renkemeyer, Campbell & Weaver v. Commissioner*, 136 T.C. 137 (2011). *Contra post*, at 26.

is one that is rooted in the legal sources that existed in 1977 when Congress adopted § 1402(a)(13).

What's more, the *Soroban* decision cannot be squared with decades of IRS-approved guidance insisting that what mattered was limited liability alone. In 1978, the first year in which the "limited partner" exception was implemented, the IRS issued partnership tax return instructions that defined "Limited Partner" as "one whose potential personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership." INTERNAL REVENUE SERVICE, PACKAGE X: INFORMATIONAL COPIES OF FEDERAL INCOME TAX FORMS 137 (1978). Thus, parties were led to believe that what mattered was liability, not control. One looks in vain for a control test in the relevant sections of the IRS guidelines, whether in the two years preceding the 1977 revision or in the forty years following them. *See* INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 30 (1976); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 149 (1977); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 2 (2015) (explaining a limited partner is "a partner in a partnership formed under a state limited partnership law, whose personal liability for partnership debts is limited to the amount of money or other property that the partner contributed or is required to contribute to the partnership."); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 2 (2016) (same); INTERNAL REVENUE SERVICE, INSTRUCTIONS FOR FORM 1065 2 (2017) (same).

The Commission's position in this case is that it can change the meaning of "limited partner" from (A) "limited liability alone," which was the pre-*Soroban* standard, to (B) *Soroban*'s "passive investor" standard—with zero action from Congress to amend § 1402(a)(13)'s text. Perhaps that level of administrative control over billions or trillions of dollars in tax liability is

permissible as a general matter. But at a minimum, even assuming the Commissioner can unilaterally effectuate such changes through tax instructions, its instructions must comport with the original public meaning of the text enacted by Congress in 1977.

The Tax Court did not attempt that task. We therefore VACATE its judgment and REMAND the case for further proceedings consistent with this opinion.

James E. Graves, Jr., *Circuit Judge*, dissenting.

Because the text and structure of 26 U.S.C. § 1402(a)(13) are clear that its tax exemption for limited partners applies only to those functioning as passive investors, I would affirm the Tax Court's decision upholding the adjustments to Sirius Solutions' federal tax returns for 2014, 2015, and 2016. Thus, I respectfully dissent.

I.

Sirius Solutions L.L.L.P. (Sirius) is a limited liability limited partnership under the state law of Delaware that operates as a business-consulting firm based in Houston, with additional offices in Dallas and London.[1] Sirius is treated as a partnership for federal income tax purposes. In 2002, each of Sirius' individual partners signed its Statement of Qualifications as "General Partner." Sirius Solutions GP, L.L.C. (Sirius GP), also formed under the state law of Delaware, is the tax matters partner (TMP) of Sirius, as defined in 26 U.S.C. § 6231(a)(7) (2014).[2] Sirius GP is the general partner of Sirius. This appeal concerns Sirius' federal tax returns for 2014, 2015 and 2016.

In 2014, Sirius had two classes of partnership interests, Class A Units and Class B Units, and was owned by nine individual partners and the general partner, Sirius GP.[3] Sirius GP held a 0.6457% interest. Four individual partners sold their partnership interests in 2014, with two of them becoming employees of the partnership. Thus, in 2015 and 2016, there were five

---

[1] *See* Del. Code Ann. tit. 6, §§ 17-101(8)-(9), 17-301(a)(2) (2014).

[2] K Alain GP, L.L.C., is now the TMP. However, I continue using Sirius to avoid confusion.

[3] Class A units were purchased from the Partnership in exchange for a five-year installment note payable to the partnership.

individual partners and Sirius GP, which held a 0.7529% interest. The individual partners were allocated a share of Sirius' income or loss during the relevant years.

Sirius reported ordinary business income of $5,829,402 in 2014, $7,242,984 in 2015, and –$490,291 in 2016. None of that income was allocated to Sirius GP. Instead, that income was allocated to the individual partners. However, Sirius did not report any net earnings from self-employment to any of the individual partners.[4]

On June 12, 2020, the Commissioner of Internal Revenue issued a TMP Notice of Final Partnership Administrative Adjustment (FPAA) to Sirius GP, as tax matters partner for Sirius (collectively referred to as "Sirius" in the singular). The Commissioner determined that an adjustment was appropriate to the amount Sirius reported on its 2014 federal tax return as net earnings from self-employment. Of particular relevance here, the adjustment notice said:

> (2) Net earnings (loss) from self-employment
>
> It is determined that your ordinary income from business consulting services is included in net earnings from self-employment for which your individual partners are liable for the self-employment tax imposed by IRC § 1401. It is further determined that your individual partners are not "limited partners" within the meaning of IRC § 1402(a)(13), and thus their distributive shares of the partnership's ordinary business income are not excluded from their net earnings from self-employment. Therefore, the net earnings from self-employment is $5,915,918.00 rather than $0.00 as shown on

[4] The Internal Revenue Code (IRC) imposes Social Security and Medicare taxes on net earnings from self-employment. 26 U.S.C. § 1402(b). The meaning of "net earnings from self-employment" is defined by statute and includes various exceptions. 26 U.S.C. § 1402(a).

> your return. Accordingly, the net earnings from self-employment is increased by $5,915,918.00.

On September 4, 2020, Sirius petitioned the Tax Court for readjustment of the FPAA adjustment, asserting that the Commissioner erred in determining that the individual partners were not "limited partners" for purposes of section 1402(a)(13). *See* 26 U.S.C. § 6226(a) (2014). The Commissioner responded on November 20, 2020.

On June 21, 2021, the IRS issued FPAAs to Sirius determining similar adjustments to Sirius' 2015 and 2016 net earnings from self-employment. For 2015, the Commissioner determined that the net earnings from self-employment should be increased from $0.00 to $7,372,756.00. For 2016, the Commissioner determined that the net earnings from self-employment should be decreased by $490,291.00. On September 17, 2021, Sirius filed a second Tax Court petition seeking readjustment of the 2015 and 2016 adjustments. The two petitions were consolidated for consideration.[5]

On November 28, 2023, the Tax Court issued the precedential opinion of *Soroban Capital Partners, LP v. Commissioner*, 161 T.C. 310 (2023), which effectively resolved the issue here.[6] The parties filed multiple stipulations of fact and issues both before and after *Soroban* was decided. Following *Soroban*, the parties stipulated that Sirius' partners are not limited partners if evaluated under a functional analysis test, as discussed later

---

[5] As Sirius acknowledges, the adjustments do not represent the amount of taxes that would be owed. The adjustments would be allocated to each partner for purposes of determining the partner's net earnings from self-employment subject to taxation.

[6] As discussed herein, the Tax Court also reaffirmed its *Soroban* decision in the similar challenge of *Denham Capital Management LP v. Commissioner*, T.C.M. 2024-114, 2024 WL 5200039 (Dec. 23, 2024). *See also Soroban Capital Partners LP v. Commissioner*, T.C.M. 2025-52, 2025 WL 1517432 ( May 28, 2025).

herein. However, Sirius maintained that *Soroban* was incorrectly decided, arguing that the proper test under § 1402(a)(13) was whether the partners are limited partners under the applicable state law. As a result, Sirius asked the Tax Court to enter a decision under Tax Court Rule 251 in favor of the Commissioner so that it could appeal the holding in *Soroban*. On February 20, 2024, the Tax Court issued decisions upholding the adjustments. The Tax Court also denied each party's pending summary judgment motions as moot. Sirius appealed. The panel majority vacated and remanded, while I dissented. *See Sirius Sols., L.L.L.P. v. Comm'r of Internal Revenue*, 165 F.4th 374 (5th Cir. 2026). The panel majority now withdraws that prior opinion on rehearing but still vacates and remands. Again, I dissent. This opinion tracks portions of my previous dissent because the majority partially corrected course. *See id.* at 388 (Graves, J., dissenting).

## II.

This court reviews a decision of the Tax Court under the same standard that is applied to district court decisions. *Green v. C.I.R.*, 507 F.3d 857, 866 (5th Cir. 2007). "Findings of fact are reviewed for clear error and issues of law are reviewed de novo. Clear error exists when this court is left with the definite and firm conviction that a mistake has been made." *Id.* (internal citation omitted).

## III.

The issue on appeal is whether the Tax Court erred in its interpretation of "limited partner, as such" in 26 U.S.C. § 1402(a)(13),

which was enacted in 1977. Section 1402(a)(13) excludes from net earnings of self-employment[7] the following:

> [T]here shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services.

26 U.S.C. § 1402(a)(13).

Section 707(c) states:

> To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

26 U.S.C. § 707(c). Section 61(a) generally defines gross income. 26 U.S.C. § 61(a). Section 162(a) sets out allowable deductions for ordinary and necessary trade or business expenses. 26 U.S.C. § 162(a). Section 263 states which capital expenditure deductions are not allowed. 26 U.S.C. § 263.

The Tax Court previously considered the application of § 1402(a)(13) in the context of other entities.[8] In *Renkemeyer, Campbell & Weaver v.*

---

[7] Section 1402(a) also defines net earnings from self-employment. 26 U.S.C. § 1402(a).

[8] The majority fails to discuss or distinguish any of these cases preceding *Soroban* or the impact of this decision on those cases. Regardless of the entity, the meaning of "limited partner, as such" pursuant to § 1402(a)(13) applied by the Tax Court has not changed since *Renkemeyer* in 2011. Presumably, the majority is somehow "rejecting" all of these cases as well.

*Commissioner*, 136 T.C. 137 (2011), the Tax Court considered the issue of whether income allocated to partners of a law firm organized as a limited liability partnership (LLP) under the laws of Kansas was subject to self-employment tax.[9] 136 T.C. at 138. In doing so, the court explained the history behind § 1402(a)(13) and applied the principles of statutory construction to ascertain Congress' intent. *Id.* at 148-150. Because the statute does not define "limited partner," the Tax Court looked to its ordinary meaning and legislative history. *Id.* at 149-150. The court concluded that:

> The insight provided reveals that the intent of section 1402(a)(13) was to ensure that individuals who merely invested in a partnership and *who were not actively participating in the partnership's business operations* (which was the archetype of limited partners at the time) would not receive credits toward Social Security coverage. The legislative history of section 1402(a)(13) does not support a holding that Congress contemplated excluding partners who performed services for a partnership in their capacity as partners (i.e., acting in the manner of self-employed persons), from liability for self-employment taxes.

*Id.* at 150 (emphasis added). The Tax Court also concluded that the LLP partners were not "limited partners" for purposes of § 1402(a)(13) because it was "clear that the partners' distributive shares of the law firm's income did not arise as a return on the partners' investment and were not 'earnings which are basically of an investment nature.'" *Id.* The court instead found that "the distributive shares arose from legal services they performed on behalf of the law firm" and that they were "subject to self-employment taxes." *Id.*

---

[9] Interestingly, the firm's practice emphasized Federal tax law. 136 T.C. at 138.

About six years later, the Tax Court considered the case of *Hardy v. Commissioner*, 113 T.C.M. (CCH) 1070 (Jan. 17, 2017). Dr. Stephen P. Hardy was a plastic surgeon who owned a minority interest in one of several surgery centers in which he performed surgeries. *Id.* at * 1, 4-7. However, Hardy had no day-to-day management or operational responsibilities in the center, which was organized as a limited liability company (LLC) in Montana. *Id.* The patients were responsible for choosing the location where the surgery would be performed, and the center or hospital billed separately for the use of the facility. *Id.* at * 4, 6. In relevant part, the issue was whether Hardy's income from the center was passive, which would allow the deduction of passive activity loss for the year in which the loss was incurred. *Id.* at * 2. Applying the *Renkemeyer* functional analysis test, the Tax Court repeatedly referenced the fact that the surgeon was a passive investor and found his income from the surgery center was passive because he "received the distributions as a limited partner acting in his capacity as an investor." *Id.* at ** 2, 30-32.

Later that year, the Tax Court again applied the functional analysis test and found that member-managers of a law firm organized as a professional limited liability company (PLLC) under Mississippi law were not limited partners for purposes of the self-employment income exclusion. *See Castigliola v. Commissioner*, 113 T.C.M. (CCH) 1296, ** 3, 14 (Apr. 12, 2017); *see also* 26 U.S.C. 1402(a)(13). Acknowledging that the exact meaning of limited partner may vary slightly by state, the court considered the Uniform Limited Partnership Act (ULPA) of 1916, the Revised Uniform Limited Partnership Act (RULPA) of 1976, and amendments added in 1976 and 1985. *Id.* at 10. Specifically, the Tax Court quoted section 7 of ULPA (1916), as follows: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at * 10. The court

then turned to section 303(a) of RULPA, which it noted that Mississippi had adopted with some modifications, for the proposition that "a limited partner would lose limited liability protection if in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at 10-11 (internal marks and citation omitted). The court also noted in its analysis that, "[b]efore the members organized the PLLC, they operated as a general partnership; and there is no evidence that organizing as a PLLC was accompanied by any change in the way they managed the business," and ultimately concluded that the partners "may not exclude any part of their distributive shares from self-employment income under section 1402(a)(13)." *Id.* at ** 13-14.

In 2023, the Tax Court considered *Soroban*, discussed more fully below, concluding that the *Renkemeyer* functional analysis test likewise applies in determining whether a limited partner in a state law limited partnership is entitled to the limited partner exception under § 1402(a)(13). 161 T.C. at 318-19. Following *Soroban*, the Tax Court reaffirmed its decision in *Denham Capital*, T.C.M. (RIA) 2024-114 (Dec. 23, 2024). In *Denham Capital*, the Tax Court also reiterated the following:

> Our caselaw has continuously reinforced our position that determinations under section 1402(a)(13) require a factual inquiry into how the partnership generated the income in question and the partners' roles and responsibilities in doing so. Petitioner's position that the Partners are eligible for the limited partnership exception merely because the Partners complied with formalities prescribed by state partnership law does not comport with our caselaw.

*Id.* at * 14 (citing *Renkemeyer*, 136 T.C. at 150; *Castigliola*, 113 T.C.M. 1296, at *7-14; *Hardy*, 113 T.C.M. 1070, at **29-32).

Soroban Capital Partners LP was a Delaware limited partnership composed of a general partner and limited partners. *Soroban*, 161 T.C. at 311. For 2016 and 2017, Soroban reported as net earnings from self-employment its guaranteed payments to its limited partners plus the general partner's share of ordinary business income. *Id.* The Commissioner later adjusted Soroban's net earnings from self-employment by increasing it to include the limited partners' share of ordinary business income on the basis that they were limited partners in name only. *Id.*

In discussing the exclusion under section 1402(a)(13), the Tax Court reiterated that, "Congress intended for this limited partner exception to apply to earnings of an investment nature. To determine whether earnings allocated to limited partners are of an investment nature necessarily requires an inquiry into the functions and roles of the limited partners." *Id.* at 312. The Tax Court found that the "limited partner" exception does not apply to a partner who is limited in name only. *Id.* at 320. "If Congress had intended that limited partners be automatically excluded, it could have simply said 'limited partner.' By adding 'as such,' Congress made clear that the limited partner exception applies only to a limited partner who is functioning as a limited partner." *Soroban*, 161 T.C. at 320. The Tax Court also found that:

> Petitioner's reliance on legislative history to overcome the plain meaning of the statute is unavailing. To the extent legislative history might be used to shed light on the meaning of the phrase "limited partner, as such," it confirms our conclusion. Congress enacted section 1402(a)(13) to exclude earnings from a mere investment. It intended for the phrase "limited partners, as such" used in section 1402(a)(13) to refer to passive investors.

*Id.*

Consistent with all of the cases cited above, the Tax Court said that it must engage in an analysis of "the functions and roles of the limited partners

in the partnership to determine whether their shares of earnings are excluded from net earnings from self-employment." *Id.* at 322-25. The Tax Court also found that such a determination is more appropriate at the partnership level than at the partner level. *Id.* at 323-24 (citing Treas. Reg. § 301.6231(a)(3)-1(b) and 26 U.S.C. § 6221). Thus, the Tax Court had jurisdiction.

Sirius asserts here that the Tax Court erred by interpreting "limited partner, as such" in *Soroban* to mean a partner functioning as a passive investor, and by not interpreting it as meaning a state-law limited partner. Sirius also argues that the Tax Court's interpretation of "as such" somehow renders "the carve-out for 'guaranteed payments' meaningless." Sirius asserts that "limited partner" is commonly defined as a partner in a state-law limited partnership with limited liability, and both the IRS and Social Security Administration have issued contemporaneous guidance defining it as such. Sirius cites various dictionaries for what it asserts is the common or ordinary meaning of "limited partner," as does the majority. However, much of this argument misses the mark.

Sirius offers only select portions of various definitions to form an oversimplified definition of "limited partner" to support its result. But those portions must be considered in context. For example, the Webster's Third New International Dictionary definitions for "limited partner" from 1971 and 1981 state only that liability "is *usu[ally]* limited" and then add a second limitation: "providing he has not held himself out to the public as a general partner and has complied with other requirements of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1313 (1971) and (1981) (emphasis added). The Black's Law Dictionary definition for "limited partnership" also states "limited partners who contribute capital and share in profits but who *take no part* in running business and incur no liability with respect to partnership obligations beyond contribution." BLACK'S LAW DICTIONARY (5th ed. 1979) (emphasis added). The 1968 version likewise

uses language clearly describing a passive investor for "special partners" under the "limited partnership" paragraph of "partnership," as opposed to general or ordinary partners "by whom the business is conducted." BLACK'S LAW DICTIONARY (4th ed. rev. 1968). BLACK'S LAW DICTIONARY (4th ed. 1968)

The majority acknowledges that the Black's Law Dictionaries from 1968 and 1979 "are not outliers," and goes on to cite various other sources in its purported quest to determine the "ordinary meaning" of "limited partner." In doing so, the majority cites the ULPA, RULPA, various law review articles, and "[c]ontemporaneous treatises," all of which effectively state that a limited partner must be only a passive investor. Despite all of that authority, the majority concludes that, "in 1977, the ordinary public meaning of 'limited partner' included a partner who did not play a significant role in managing or running the business." The majority further concludes that, "[i]n adopting this reading, we reject the Tax Court's *Soroban* decision." I disagree for the reasons discussed below.

The majority cites *Plasteel Products Corporation v. Helman*, 271 F.2d 354, 356 (1st Cir. 1959), and states:

> The *Plasteel* court recognized that if a partner controlled partnership affairs, the partner was no longer functioning as a limited partner. *Ibid*. But it suggested a limited partner could have lesser involvement. *Ibid*. For example, it noted that a limited partner could sign the partnership agreement as a general partner without losing his limited-partner status. Ibid. (citing *Rathke v. Griffith*, 218 P.2d 757, 757 (Wash. 1950)). While *Plasteel* turned on state law, not federal tax law, it nonetheless formed part of the backdrop against which Congress enacted § 1402(a)(13) in 1977. And that backdrop suggests some participation is allowed, so long as the partners do not exercise control over the business. *Contra post*, at 23 (arguing that Plasteel does not allow for such a distinction).

However, the majority's statements regarding *Plasteel* are unsupported. *Plasteel* was an action under state law, as the majority acknowledges, to recover a $6,555.29 for merchandise sold and delivered to the partnership. *Id.* at 355. Various defendants, including both general and limited partners, moved for summary judgment. *Id.* The district court granted the motions, in relevant part, and the plaintiff appealed. That case involved a limited partnership agreement between a general partner, who contributed services but no cash, and limited partners, who were described as trustees of three trusts. *Id.* Further, the agreement named the father of the beneficiaries of the first trust as the general sales manager. The First Circuit said that the question was whether the appellees/limited partners were "liable as general partners as a result of their execution of the December 1955 agreement," which named a general sales manager. The First Circuit specified that, "the only conduct relied on to charge appellees as general partners is the signing of the limited partnership agreement." *Id.* at 356. The court then concluded that the limited partners took no part in the control of the business under the Massachusetts ULPA, which said: "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." *Id.* at 355-56 (citing Mass. Gen. Laws Ann. c. 109, § 7). The *Plasteel* court said nothing to indicate that some amount of control of the business could be permissible, as the majority suggests.[10]

Moreover, "federal courts," including this circuit, have long used "passive investor" in evaluating limited partners in a variety of cases. *See*

---

[10] The majority likewise misconstrues my disagreement with its characterization of *Plasteel*. I simply disagree with the majority that what is unsaid in *Plasteel*, an out-of-circuit case dealing with state law, somehow overcomes *all* of the acknowledged authority here and supports reversing the Tax Court.

*Masel v. Villarreal*, 924 F.3d 734, 744-46 (5th Cir. 2019); *Nunez v. Robin*, 415 F. App'x 586, 587 at n. 2, 591 (5th Cir. 2011); *Steinhardt Group Inc. v. Citicorp*, 126 F.3d 144, 145, 155 (3d Cir. 1997); *Marin TV Servs. Partners, Ltd. v. F.C.C.*, 993 F.2d 261, 262 (D.C. 1993); *Maritan v. Birmingham Prop.*, 875 F.2d 1451, 1452, 1459 (10th Cir. 1989); *Levin v. C.I.R.*, 832 F.2d 403,406-08 (7th Cir. 1987) (citing 87 T.C. 698, 725-26 (1986)); *Frazier v. Manson*, 651 F.2d 1078, 1081 (5th Cir. Unit A July 1981); *Goodman v. Epstein*, 582 F.2d 388, 406 n. 51 (7th Cir. 1978).[11] *See also Renkemeyer*, 136 T.C. at 147-48; *Howell v. C.I.R.*, 104 T.C.M. (CCH) 519, *4, 6 (2012).

The majority dismisses these cases, first chiding the Tax Court that "federal courts decide relevant issues of law," and then quoting "*Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506 (5th Cir. 2026), for the following: "And even 'years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text.'" Notwithstanding the majority's failure to identify any portion of the plain text which supports its decision to reverse the tax court, as discussed below, the majority misconstrues *Buenrostro-Mendez*. The selected portion of the statement quoted by the majority was a reference to the government's longstanding practice. In context, this court said: "While that is true, the government's past practice has little to do with the statute's text. The text says what it says, regardless of the decisions of prior Administrations. Years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text." Unlike the statute in that immigration case, the statute here does not specify what the majority claims, nor does it define limited partner. Moreover, I am

[11] To reiterate, these cases are being cited for their longstanding use of "passive investor" in evaluating limited partners, not for any interpretation of "different statutes" or their corresponding facts, despite the majority's attempted deflection while failing to dispute my point.

not referencing the government's longstanding practice, I am referencing judicial opinions in which "federal courts" across the country have used "passive investor" to analyze limited partners, consistent with the statutory text, common usage, all of the definitions, and other authority.

Regardless, the issue is not simply the definition of "limited partner." Instead, the issue is what constitutes a "limited partner, as such" for purposes of section 1402(a)(13). Sirius acknowledges as much with its additional arguments that the Tax Court misinterpreted the phrase "as such," as discussed herein. The majority likewise acknowledges this but then concludes that the Tax Court erroneously "made no attempt to ground its rule in the original public meaning of 'limited partner' in 1977." The majority fails to establish any basis for such a conclusion or any distinction between "passive investor" and "limited partner, as such."

The majority also states that "the plain text of the statute points towards" a conclusion that "*some* participation is allowed, so long as the partners do not exercise *control* over the business." But the majority fails to identify the portion of the statute's plain text here which "points towards" the conclusion that partners may participate "so long as the partners do not exercise *control* over the business," or so long as the partner "did not play a significant role in managing or running the business."[12] Again, the statute does not define "limited partner." But, even if it did, that would not establish any error in the Tax Court's definition of "limited partner, as such." That is because "federal courts" have long defined a limited partner as a "passive investor," and that is consistent with the functional analysis test, as discussed herein. The parties here filed multiple stipulations of facts

[12] Or any other slight variations the majority may use in its opinion, although differing or contradictory definitions only add unnecessary confusion.

and settled issues—before and after *Soroban*. Those stipulations included a joint Stipulation of Settled Issues filed on December 19, 2023, in which the parties agreed that Sirius' partners are not limited partners if evaluated under a functional analysis test as set out in both *Soroban* and *Renkemeyer*, discussed previously herein and decided in 2011. The majority fails to discuss *Renkemeyer* or the impact of its decision on *Renkemeyer*.

Additionally, the majority's position on a functional analysis is both contradictory and unclear. It does not appear that the majority actually takes issue with the Tax Court's definition of "limited partner, as such." Instead, the majority appears to be improperly attempting to define "passive investor" and taking issue with the application of a functional analysis test, while simultaneously essentially arguing that a functional analysis test allows for some level of participation. But the majority is also unable to point to any evidence that the level of control or participation here was not as significant as the parties stipulated. There is little clarity as to the intended effect of the majority's decision and its "rejection" of *Soroban*. It is clear, however, that the majority has created an indefensible, illogical, and illegal loophole which allows millions of dollars in net earnings from self-employment to go untaxed as earnings even though that is exactly what they are.

Based on my de novo review, and because the majority ignores the various definitions it cites, overlooks applicable cases, misconstrues the plain text of the statute and *Plasteel*, and fails to establish that any authority supports its conclusion, I would affirm the Tax Court. Thus, I respectfully dissent.